**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Thomas James SINITO,
Defendant-Appellant.**

**No. 82–3712.**

United States Court of Appeals,
Sixth Circuit.

Argued Aug. 4, 1983.

Decided Dec. 23, 1983.

Rehearing and Rehearing En Banc
Denied Feb. 8, 1984.

Bernard A. Berkman, Berkman, Gordon, Murray & Palda, J. Michael Murray (argued), Cleveland, Ohio, for defendant-appellant.

Mervyn Hamburg (argued), Washington, D.C., for plaintiff-appellee.

Before KEITH, KENNEDY and WELLFORD, Circuit Judges.

KEITH, Circuit Judge.

Pursuant to *Abney v. United States*,[1] 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), defendant Thomas Sinito appeals a pretrial order of the district court which denied his motion to dismiss counts one and

---

1. In *Abney*, the Supreme Court held that the denial of a motion to dismiss an indictment on double jeopardy grounds is immediately appealable.

two of a seventy-count indictment.[2] Counts one and two of the indictment charged defendant and five others with violation of the Racketeer Influenced and Corrupt Organizations Statute (RICO), 18 U.S.C. § 1962(c) and (d)[3] and operation of a continuing criminal enterprise, 21 U.S.C. § 848.[4] The indictment charged that defendant was a member of organized crime who, along with others, used threats of violence and committed acts of murder in order to protect the organization's illegal drug and gambling activities.

This case raises the difficult question of whether the separate conspiracies charged in different grand jury indictments are, in reality, one for the purposes of the fifth amendment prohibition against double jeopardy.

## I.

## FACTS

### 1981 Indictment (Sinito I)

On April 10, 1981, defendant Sinito and his cousin, Charles Sinito, were charged in an eighteen count indictment (Sinito I) with a RICO conspiracy, 18 U.S.C. § 1962(d), the completed substantive RICO offense, 18 U.S.C. § 1962(c), conspiracy to make extortionate extensions of credit, 18 U.S.C. § 892, the collection of extensions of credit by extortionate means, 18 U.S.C. § 894 and, as to defendant alone, income tax evasion, 26 U.S.C. § 7201, and filing of a false tax return, 26 U.S.C. § 7206. The predicate acts underlying the charges involved violations of the federal loansharking laws. Sinito conducted a loansharking operation out of the Appliance Mart, an appliance store owned by Charles Sinito. The indictment identified twelve victims of the loansharking racket and stated that the activity occurred between March 1, 1974 and January 30, 1979.

The trial of Sinito commenced on July 16, 1981. The jury found defendant guilty on August 3, 1981 of the RICO conspiracy and several of the substantive counts. Defendant Sinito received a sentence of eighteen years and a twenty-thousand dollar fine.[5]

### 1982 Indictment (Sinito II)

The following year, on October 27, 1982, Sinito, along with four other individuals, were named as defendants in a new seventy-count indictment (Sinito II). Count one charged Sinito, Joseph Gallo, Frederick Graewe, Hartmut Graewe and Kevin McTaggart with a RICO conspiracy in violation of 18 U.S.C. § 1962(c). The indictment alleged these men belonged to an enterprise known as the "Cleveland Organized Crime Family," the "Outfit", the "Or-

---

**2.** Originally, the indictment charged a total of seventy-four counts and was returned by the grand jury on July 6, 1982. Four of the counts were deleted because Carmen Zagaria, the only defendant named in these counts, was transformed into an unindicted co-conspirator as a result of a plea bargaining agreement with the government. A superseded indictment was returned on October 27, 1982. The only difference between these two indictments was the omission of Carmen Zagaria.

**3.** 18 U.S.C. § 1962 provides in relevant parts:

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), or (b), or (c) of this section.

**4.** A person is engaged in a continuing criminal enterprise if—

(1) he violates any provision of this subchapter or subchapter II of this chapter [pertaining to narcotics trafficking] the punishment for which is a felony, and

(2) such violation is a part of a continuing series of violations of this subchapter or subchapter II of this chapter—

(A) which are undertaken by such person in concert with five or more other persons with respect to whom such person occupies a position of organizer, a supervisory position, or any other position of management, and

(B) from which such person obtains substantial income or resources.

21 U.S.C. § 848.

**5.** The sentence was affirmed by our Court on March 29, 1983, Case No. 81–3624.

ganization", or the "Mafia", and that this organization was used in a conspiracy to facilitate illegal drug and gambling activities. The predicate acts involved were murder, gambling and obstruction of justice. Count two charged the aforementioned defendants and Angelo Lonardo [6] with engaging in a continuing criminal enterprise involving the distribution and possession of illegal narcotics, from which they derived substantial income in violation of 21 U.S.C. § 848. The remainder of the seventy counts in the indictment charged defendants with interstate travel in aid of racketeering, 18 U.S.C. § 1952, possession with intent to distribute and distribution of controlled substances, 21 U.S.C. § 841, and use of a telephone to facilitate the distribution of controlled substances, 21 U.S.C. § 843(b). Only counts one and two in the second indictment are the subjects of this appeal.

On September 23, 1982, Sinito filed a motion in the United States District Court in Ohio to dismiss the indictment. In his motion he raised two issues. First, he contends that count one of the indictment was barred by the double jeopardy clause because he was tried and convicted a year earlier of a RICO offense. Sinito argues that in reality there is but one conspiracy and that prosecution under the second indictment violates his fifth amendment guarantee against double jeopardy. Second, he claims that count one of the second indictment is a lesser included offense of count two, and therefore count two also violates the double jeopardy clause.

An evidentiary hearing was held on October 19, 1982 to determine the merits of Sinito's claims. Three special investigating officers testified at that hearing. Case Agent Herbert Cohrs had worked on the investigation which culminated in the loansharking indictment the year before. He also participated in the investigation of the present RICO conspiracy. It was his opinion that while the witnesses in the two cases differed, there was an overlap of the parties involved in the two indictments.[7]

Cohrs testified that he had read reports from other investigating officers which indicated the existence of one massive criminal conspiracy in Cleveland, and in the past year he had learned that Sinito was a member.

Next to testify was Special Agent Dean Winslow, who was the investigating case agent in the present indictment. Winslow stated he had been aware of Sinito's involvement in loansharking since he was first assigned to the Cleveland office in 1978. He further testified that while he was unaware that Sinito's drug activities were financed through loansharking, a source had told him that this was true. Winslow also stated that, from his own investigation, he concluded there was one single conspiracy to control the various illegal rackets in Cleveland, and these rackets included drugs, gambling, and loansharking. It was his belief that Lonardo and James Licavoli were at the top of this organization and defendant Sinito was at the second level.

FBI agent George Grotz, who supervised the Organized Crime Squad in Cleveland, was the last witness to testify. He stated that he had worked on an indictment in 1978 which involved defendant and Lonar-

---

6. Angelo Lonardo is the reputed "Boss" of the Cleveland Organized Crime Family.

7. For example, at the loansharking trial it was disclosed that Angelo Lonardo provided the funds to Sinito, who in turn loaned them to the victims. Agent Cohrs also testified that one of the loansharking witnesses had told him that Sinito was involved in drugs as far back as 1974, and that Lonardo was seen at the Appliance Mart in 1974, and was believed to be Sinito's financial backer. Two other government witnesses at the loansharking trial testified that appellant was connected with Angelo

Lonardo. Lonardo is named as a defendant in count two of the present indictment.

Agent Cohrs provided testimony concerning another individual who was involved in both the loansharking and the present drug indictments. Cohrs testified that at the loansharking trial an attempt had been made to enter into evidence checks written by Carmen Zagaria in payment of a debt owed to defendant Sinito. As further evidence of one conspiracy, appellant claims that Zagaria was a victim of his loansharking operation. Zagaria will be a principal government witness in the upcoming trial.

do.[8] Subsequently, Sinito was dismissed as a defendant in the indictment. Agent Grotz stated that through investigations he had concluded there was one massive conspiracy in Cleveland, controlled by the Mafia and organized to run gambling, drug trafficking and loansharking. Moreover, he believed that defendant Sinito, along with Lonardo and Joseph Gallo, were members of the conspiracy.

At the conclusion of the agents' testimony, defense counsel argued the government had artificially divided a single alleged conspiracy to control the drug, gambling and loansharking racket in the Cleveland area into two alleged conspiracies; one smaller conspiracy to control loansharking and another far larger conspiracy to control the other rackets. Defendant contends that since there was only one conspiracy involving loansharking, gambling and drugs, to again prosecute Sinito for the conspiracy upon which he had already been prosecuted, convicted, and sentenced would violate the double jeopardy clause.

The government's position was that the evidence produced at the forthcoming trial would not duplicate the evidence used to previously convict appellant. Moreover, the prior conviction for RICO related solely to loansharking and did not immunize defendant from criminal liability for all other misdeeds.

In a memorandum opinion, the district court denied defendant's motion to dismiss. The court relied upon the totality of circumstances test enunciated in *United States v. Jabara,* 644 F.2d 574 (6th Cir.1981) to conclude the conspiracy alleged in the prior loansharking indictment differed from the conspiracy alleged in the present indictment. Thus, defendant had not been twice placed in jeopardy. Also, in reliance on *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982), the court found the RICO count was not a lesser included offense of the continuing criminal enterprise count, and therefore this claim lacked merit. For the reasons set forth below, we affirm the decision of the district court.

## II.

### DOUBLE JEOPARDY AND MULTIPLE PROSECUTIONS UNDER RICO

■ The fifth amendment in part provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." Thus, the double jeopardy clause provides a guarantee that "the State with all its resources and power [shall] not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continued state of anxiety and insecurity . . . ." *United States v. Tercero,* 580 F.2d 312, 314 (8th Cir.1978) (*quoting Green v. United States,* 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957)).

The double jeopardy clause has traditionally provided a bulwark against both multiple punishments as well as multiple prosecutions for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977); *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969).

The test to determine whether two offenses are the same was first enunciated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). In *Blockburger,* the Supreme Court said:

[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether these are two offenses or only one is whether each provision requires proof of fact which the other does not. A

---

8. On January 6, 1978, defendant Sinito, James T. Licavoli, John P. Calandra, Angelo Lonardo, Ronald Carrabia, Pasquale J. Cisternino, Alfred S. Calabrese and Aladena T. Fratianno were indicted for conspiracy to conduct racketeering activity in violation of 18 U.S.C. § 1962(d). That indictment charged a RICO conspiracy of individuals associated to carry on and supervise loansharking, gambling, and murder, and other criminal activities in Ohio.

single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other (citations omitted).

Although *Blockburger* concerned the imposition of cumulative punishments, it is well recognized that "[i]f two offenses are the same under this test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions." *Brown v. Ohio,* 432 U.S. at 166, 97 S.Ct. at 2226. Thus, under *Blockburger,* offenses are deemed identical for purposes of the double jeopardy clause where the evidence required to support. conviction in one of the prosecutions is sufficient to support conviction in the other prosecution.

Application of the Blockburger test to the instant case would lead to the conclusion that the two indictments in question are not violative of the double jeopardy clause. Since both indictments charge different overt acts—loansharking in Sinito I, and murder, drug trafficking, gambling and obstruction of justice in Sinito II, obviously the evidence required to prove each of the acts would be different. However, our inquiry does not stop here. In recent years courts have recognized the inherent infirmities in applying the same evidence test to conspiracy cases. The government, in a criminal conspiracy case, is often presented with a host of co-conspirators and a multiplicity of overt acts. An overzealous prosecutor, in drafting the indictment, could choose certain overt acts in one indictment and a different set of overt acts in a second indictment, thereby carving up one conspiracy into two or even more artificial offenses. However, such a dissection would circumvent a charge of double jeopardy, since each set of overt acts would require different evidence. The district court recognized this dilemma in the instant case and refrained from applying the same evidence test.

In a conspiracy case it is the agreement which forms the nucleus of the offense. In *Braverman v. United States,* 317 U.S. 49, 53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942) the Court said, "[t]he gist of the crime of conspiracy as defined by the statute is the agreement." Therefore, a determination of whether the government can prosecute on more than one conspiracy rests on whether there exists more than one agreement.

The Totality of Circumstances Test

■ The district court found these indictments were based upon separate conspiracies by applying the totality of circumstances test set forth in *United States v. Jabara,* 644 F.2d 574 (6th Cir.1981). In *Jabara,* the defendants had been indicted in Michigan for conspiracy to violate the narcotics laws. These same defendants had been previously indicted in California for conspiracy to violate the same drug laws. The court dismissed the conspiracy count on grounds that both indictments arose from one conspiracy. The trial court considered the totality of the circumstances test and found there was but one conspiracy. This Court agreed. Such an approach has been applied by a number of circuits. *United States v. Castro,* 629 F.2d 456 (7th Cir.1980); *United States v. Tercero,* 580 F.2d 312 (8th Cir. 1978); *United States v. Marable,* 578 F.2d 151 (5th Cir.1978); *United States v. Mallah,* 503 F.2d 971 (2d Cir.1974), *cert. denied,* 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). The test requires the trial court, in determining whether two conspiracies arise from a single agreement, to consider the elements of: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place. *See United States v. Stricklin,* 591 F.2d 1112 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979); *United States v. Marable,* 578 F.2d at 154. Where several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies

are separate and distinct offenses. *United States v. Marable, supra; United States v. Mallah,* 503 F.2d at 971. Following this analysis, we now turn to a determination of whether the two separate conspiracies are in actuality one.

■ The first indictment, Sinito I, charges that the illegal loansharking acts took place between March 1, 1974 and January 30, 1979. The present indictment alleges that illegal activity occurred between March, 1978 and October 28, 1982. An overlap of ten months is not indicative of one conspiracy. In *United States v. Inmon,* 594 F.2d 352 (3rd Cir.), *cert. denied,* 444 U.S. 859, 100 S.Ct. 121, 62 L.Ed.2d 79 (1979), the time period in the first indictment completely subsumed the time period in the second indictment. Yet the court, in finding two conspiracies, stated: "[t]ime frames and personnel can overlap in separate criminal agreements. In a metropolitan area such as Pittsburgh, it is possible for more than one scheme involving the distribution of heroin to exist." *Inmon,* 594 F.2d at 354. Thus, it is not surprising there would be some overlap of time in the present case, particularly in light of the dissimilarities of the offenses charged in each indictment.

■ The second factor to consider is personnel. Each indictment involved a different set of participants with the exception of defendant Sinito. He was the only party charged in both indictments. This fact, of course, lends support to the district court's conclusion there were two conspiracies. However, it is not dispositive of the issue. Appellant, in arguing the existence of one conspiracy, relies upon a number of individuals who were associated with both indictments, although unnamed as defendants.

Angelo Lonardo, described as the head of the Cleveland Mafia, was mentioned in the loansharking trial as supplying Sinito with the financial backing for his loansharking operation. Lonardo was also seen visiting the Appliance Mart on numerous occasions. In count two of the present indictment Lonardo is named as a defendant. This overlap in the two indictments appears tenuous at best, since Lonardo was neither charged

in count one of the present indictment as a named defendant or unindicted co-conspirator, nor was he named as a co-defendant in the loansharking trial.

Appellant's offering of Carmen Zagaria as proof of one conspiracy is equally as tenuous. Zagaria's name appears in the investigation surrounding both indictments. At the loansharking trial, the government attempted to submit into evidence checks drawn by Zagaria in payment to Sinito. The government attempted to offer the checks as proof of payment for a loansharking debt. However, the checks were not admitted into evidence and Zagaria did not testify at the loansharking trial. In the present indictment, Zagaria will be called as a principal government witness. According to the government, he will testify that the checks sought to be admitted into evidence at the loansharking trial were unrelated to loansharking. Rather they had been tendered in payment of drugs.

Finally, appellant asserts that a third individual, David Perrier, was associated with both cases. Perrier collected debts for defendant in his loansharking operation, but he was not named as a defendant in the loansharking indictment because he is deceased. In the present indictment, defendant is accused of killing Perrier on the orders of an unindicted co-conspirator.

The appearance of these three individuals: Lonardo, Zagaria and Perrier, in the investigations surrounding two indictments does not lead to a conclusion there exists only one conspiracy. "The rule [against double jeopardy] does not apply where there are two distinct conspiracies, even though they may involve some of the same participants." *United States v. Lurz,* 666 F.2d 69, 74 (4th Cir.1981), *cert. denied,* 459 U.S. 843, 103 S.Ct. 95, 74 L.Ed.2d 87 (1982); *United States v. Papa,* 533 F.2d 815, 821–22 (2d Cir.), *cert. denied,* 429 U.S. 961, 97 S.Ct. 387, 50 L.Ed.2d 329 (1976). This case is readily distinguishable from those cases where it was found that only one conspiracy existed based on the overlap of personnel. For example, in *United States v. Marable,* 578 F.2d 151, 154 (5th Cir.1978),

the court found only one conspiracy. The cast of characters was identical in the indictment which charged conspiracy and distribution of heroin, with the exception of one individual, to the characters involved in a subsequent indictment charging conspiracy and distribution of cocaine. *See also United States v. Tercero*, 580 F.2d 312 (8th Cir.1978) (the court found that artificially drawn indictments, alleging separate conspiracies, actually set forth only one conspiracy because the overlap in personnel in each indictment was significant). Here, unlike in *Marable and Tercero*, the personnel overlap in each alleged conspiracy is minuscule. The defendants charged in the loansharking case, with the exception of Sinito, are different from the individuals charged in the present indictment. The loansharking prosecution was aimed at Sinito and his cousin. The present indictment involves a host of figures, unmentioned in the loansharking trial and alleged to be active members of the Mafia. Indeed, this organized crime connection plays a central theme in the present indictment, but was avoided in the loansharking case.

■ Although both indictments charge violations of the same statute, 18 U.S.C. § 1962(c) and (d), the underlying statutory offenses are different. Sinito I was based on the illegal collection of debts, i.e., loansharking. Sinito II charged defendant with associating as a member of an enterprise to engage in a pattern of racketeering activity, to wit: murder, drug trafficking and illegal gambling. The enterprise charged in the loansharking indictment, Sinito I, is the Appliance Mart, a corporation incorporated in the State of Ohio. It was from this enterprise that defendants conducted their loansharking activities. In the present indictment, the enterprise charged is "a group of individuals associated in fact to commit murder and violence . . . in order to facilitate narcotics trafficking . . . and to remove threats to the enterprise by killing potential police informants . . . in order to preserve the enterprise's control of the narcotics business in . . . Cleveland." The enterprise to which the present indictment refers is Organized Crime or the Mafia.

Clearly, it is distinguishable from the Appliance Mart, which was a supposed legal enterprise from which illegal loansharking was conducted.

■ The overt acts charged in the present indictment are murder, gambling, drug trafficking and obstruction of justice. In Sinito I, the overt act was loansharking. Of course we recognize, as did the district court, that simply comparing different overt acts in the indictment does not accurately determine the issue. Such an inquiry would, as has already been stated, "permit the government arbitrarily to split unitary . . . conspiracies and to initiate as many prosecutions." *United States v. Ruigomez*, 576 F.2d 1149, 1151 (5th Cir.1978). The more sound approach is a query of whether the particular acts alleged in the indictment are part of a larger, unified conspiracy for which the defendant has already been prosecuted. In the instant case, we are of the opinion that they are not. Prosecution of the acts charged in the present indictment indicates a clear and permissible intent to punish activity divorced from loansharking, which was the sole scope of the first indictment.

■ Finally, the agents' belief that they were investigating one massive conspiracy is not controlling. The testimony of the three agents was presented to the trial judge at the pretrial hearing. The trial judge considered their testimony in light of all the evidence, and was unpersuaded as to the existence of one continuing conspiracy. We agree. As non-lawyers, the agents held no position of expertise in the area of conspiracy law. Their opinion as to the existence of one conspiracy, although entitled to consideration, is but one of the factors the court should and did consider in making a decision based on the totality of the evidence presented.

Defendant makes much ado about the geographical locations set forth in the two indictments. Each indictment charged that events occurred in the Northern District of Ohio, Eastern Division and elsewhere. Standing alone, this fact is of minimum

significance. As the district court noted, "it is unquestioned, however, that such an allegation is contained in each indictment for venue purposes."

Thus, the relevant factors: time, personnel overlap, the statutory offenses charged, the nature of the overt acts and the location, taken in concert, fail to support defendant's claim that the indictment upon which he was previously charged and convicted is based on the same conspiracy for which he is presently charged.

## III.

### RICO AND CONTINUING CRIMINAL ENTERPRISE

The second prong of Sinito's double jeopardy argument is that the Continuing Criminal Enterprise and RICO conspiracy counts are, in relation to one another, greater and lesser included counts. Accordingly, to prosecute defendant on the Continuing Criminal Enterprise count, the greater offense, and a RICO conspiracy, the lesser included offense, violates the double jeopardy prohibition against multiple prosecutions.

We have already held that prosecution of Sinito on the RICO conspiracy charged in count one is not barred by the double jeopardy clause. However, even if the RICO conspiracy in count one was barred by the RICO conspiracy of which defendant has already been convicted, there would be no bar to the Continuing Criminal Enterprise count because the offenses are separate crimes.

In order to determine whether two separately charged offenses are the same for purposes of barring successive prosecutions, one must again look to the same evidence test enunciated in *Blockburger v. United*

*States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

> where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182.

In *Brown v. Ohio,* 432 U.S. 161, 168–70, 97 S.Ct. 2221, 2226–28, 53 L.Ed.2d 187 (1977), the Supreme Court applied *Blockburger* to a case involving greater and lesser included offenses.[9] The Court held that the double jeopardy clause barred indictment for a greater offense after conviction of the lesser included offense. The Court reasoned that the *Blockburger* test would not be met with the lesser included offense, joyriding, since no additional proof is needed to prove the lesser offense that is not needed to prove the greater offense.

A review of the present indictment shows that each offense requires proof of facts which the other does not, thus the *Blockburger* test is readily satisfied.

Count I charged defendant Sinito and four others with association in an enterprise to commit and threaten to commit acts of murder and violence in order to traffic drugs and conduct a gambling operation. This group of individuals was charged with conducting their affairs through a pattern of racketeering activities. The overt acts which the defendant was specifically charged included the operation of an illegal gambling business, the aggravated murder with premeditation of Keith Ritson, David Perrier and Joseph Giamo,[10] conspiracy to control the illegal drug and gambling market in Cleveland[11] and possession of over 60,000 qualude tablets, all in violation of 18 U.S.C. §§ 1961, 1962(c) and (d).

---

**9.** In *Brown,* the defendant was first convicted of joyriding and then prosecuted for auto theft.

**10.** Allegedly, these individuals were shot because money was owed them or they threatened to disclose information concerning the illegal enterprise.

**11.** The indictment alleges that unindicted co-conspirator Carmen Zagaria entered into a merger or partnership with defendant pursuant to which the Mafia, represented by defendant, would allow Zagaria to monopolize the Cleveland drug market and gambling enterprise, and all were to share in the profits.

Count 2 charged Sinito and the same four defendants with engaging in a continuing criminal enterprise, to wit: the distribution and possession with intent to distribute both Schedule I and II controlled substances.[12] This operation was conducted through interstate commerce in violation of 21 U.S.C. § 843(b) and was undertaken by defendant in concert with at least five others, with whom he occupied a supervisory or managerial role[13] and from which he gained substantial income, all in violation of 21 U.S.C. § 848.

### Background on RICO

■ Congress' enactment of the Organized Crime Control Act of 1970 evinced a strong concern for the pervasiveness of organized crimes' control over virtually every aspect of American society and the government's heretofore limited capacity to control the problem. The statement of findings which prefaced the Act stated:

> [t]he Congress finds that (1) organized crime in the United States is a highly sophisticated, diversified, and widespread activity that annually drains billions of dollars from America's economy by unlawful conduct and the illegal use of force, fraud, and corruption.
>
> *    *    *    *    *    *
>
> (5) [O]rganized crime continues to grow because of defects in the evidence gathering process of the law inhibiting the development of the legally admissible evidence necessary to bring criminal and other sanctions or remedies to bear on the unlawful activities of those engaged in organized crime and because the sanctions and remedies available to the

Government are unnecessarily limited in scope and impact.

Of the ten titles comprising the Act, Title IX, entitled Racketeer Influenced and Corrupt Organizations (RICO) is perhaps the best known. Its purpose was to aid in the eradication of the malevolent forces of crime and corruption by broadening the sanctions and penalties available to the prosecutorial arm of the government.

The government, in order to prove a RICO violation under 18 U.S.C. § 1962(c) must establish: (1) the existence of an enterprise which affects interstate or foreign commerce; (2) that the defendant "associated with" the enterprise; (3) that the defendant participated in the conduct of the enterprise's affairs; and (4) that the participation was through a pattern of racketeering activity.[14] *See United States v. Phillips,* 664 F.2d 971 (5th Cir.1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982); *United States v. Bright,* 630 F.2d 804 (5th Cir.1980); *United States v. Elliott,* 571 F.2d 880, 897–99 (5th Cir.), *cert. denied,* 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978).

■ In order to prove a RICO conspiracy under 18 U.S.C. § 1962(d), the government must establish, in addition to the aforementioned elements, the existence of an illicit agreement to violate the substantive RICO provision. *United States v. Phillips,* 664 F.2d at 1012.

RICO requires proof of an enterprise plus a pattern of racketeering activity. An enterprise is defined as including "any individual partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact al-

---

**12.** These drugs included marijuana, hashish, lysergic acid diethylamide (LSD), cocaine, methaqualone and phencyclidine (PCP).

**13.** In the crime structure, Sinito allegedly was a direct subordinate to Angelo Lonardo—the "Boss" of the Cleveland Crime Family. Sinito, played a role as financier and protector from rival encroachments. He also served as a buffer and conduit to Lonardo, by protecting him from criminal liability and relaying instructions to other members of the conspiracy.

**14.** "Racketeering activity" means (a) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year.... § 1961(1)(A). The federal crimes include such obvious organized crime related activities as bribery, counterfeiting, embezzlement from pension and welfare funds, mail fraud, obstruction of justice, extortion, illegal gambling, and manufacturing narcotics. § 1961(1)(B).

though not a legal entity." 18 U.S.C. § 1961(4). This definition has been interpreted to mean both legitimate and illegitimate enterprises. *United States v. Turkette,* 452 U.S. 576, 587, 101 S.Ct. 2524, 2530, 69 L.Ed.2d 246 (1981). Racketeering activity means any activity indictable under the provisions of Title 18 and a pattern of racketeering activity requires at least two acts of the activities prohibited under Title 18.

■ Proof of an enterprise or pattern of racketeering activity, standing alone, will not sustain a RICO conviction. As the court stated in *United States v. Elliott, supra:*

> The gravamen of the conspiracy charge in this case is not that each defendant agreed to commit arson, to obstruct justice and to sell narcotics; rather, it is that each agreed to participate, directly and indirectly, in the affairs of the enterprise by committing two or more predicate acts.

571 F.2d at 902.

■ It is unnecessary that the underlying predicate acts be interrelated as long as the acts are connected to the affairs of the enterprise. *United States v. Phillips,* 664 F.2d at 1011; *United States v. Elliott,* 571 F.2d at 899 n. 23. Moreover, the defendant's participation in the enterprise may take place through the offense of various crimes unrelated to one another as long as these crimes are in some way intended to further the enterprise's affairs. *Phillips,* at 1012; *Elliott,* at 902-3.

■ In addition to proving the aforementioned elements, proof of a RICO conspiracy requires the existence of an agreement. An agreement can be shown if "the defendant ... objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes."

Continuing Criminal Enterprise

■ The government, in order to prove a continuing criminal enterprise in violation of 21 U.S.C. § 848, must show that the defendant: 1) engaged in a continuing series of federal drug felony violations; 2) that were undertaken in concert with five or more persons; 3) with respect to whom he occupied a position of organizer, supervisor or some other managerial status; and 4) from which defendant had obtained substantial income or resources. *United States v. Michel,* 588 F.2d 986, 1000 n. 14 (5th Cir.), *cert. denied,* 444 U.S. 825, 100 S.Ct. 47, 62 L.Ed.2d 32 (1979).

■ The relationship requirement in a § 848 case is flexible. The defendant's relationship with the five other individuals need not exist at the same moment in time. There can exist separate, individual relations with the five persons. *United States v. Phillips, supra.* And, the five individuals need not act at the same time. *United States v. Bolts,* 558 F.2d 316, 320-21 (5th Cir.), *cert. denied,* 439 U.S. 898, 99 S.Ct. 262, 58 L.Ed.2d 246 (1977).

■ The continuing series element in a continuing criminal enterprise is established by proof of three or more related narcotics violations. *United States v. Valenzuela,* 596 F.2d 1361, 1367 (9th Cir.), *cert. denied,* 444 U.S. 865, 100 S.Ct. 136, 62 L.Ed.2d 88 (1979); *United States v. Johnson,* 575 F.2d 1347, 1357 (5th Cir.1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 454 (1979).

■ The continuing criminal enterprise law is a conspiracy statute of unique proportions. As the Supreme Court recognized in *Jeffers v. United States,* 432 U.S. 137, 149, 97 S.Ct. 2207, 2215, 53 L.Ed.2d 168 (1977), a § 848 case requires proof of an agreement and in that respect it is indistinguishable from a standard conspiracy statute. However, unlike a typical conspiracy statute which proscribes an inchoate offense, § 848 requires proof of a substantive violation. *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981). Finally, § 848, commonly referred to as the "Kingpin" statute, is directly aimed at the organizers and leaders of narcotics operations. *United States v. Webster,* 639 F.2d 174 (4th Cir.

1981), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982).

### RICO and Continuing Criminal Enterprise Are Not Greater and Lesser Included Offenses.

The differences between the RICO and the Continuing Criminal Enterprise statutes are readily apparent and support a finding that the offenses are separate and distinct for purposes of the double jeopardy clause.

RICO encompasses any pattern of racketeering activity proscribed by 18 U.S.C. § 1961. Continuing Criminal Enterprise is limited solely to narcotics trafficking. RICO requires no minimum number of participants. A continuing criminal enterprise has an express requirement that at least five individuals be involved.

RICO is not addressed to any specific level of organized crime figure. In fact, its breadth encompasses not only the illegal enterprise, i.e., the Mafia, but also the legitimate operation through which a pattern of racketeering activity is conducted. In contrast, the object of the Continuing Criminal Enterprise statute or "Kingpin" statute is specifically aimed at upper level crime figures who occupy a position of control in the narcotics netherworld.

■ Finally, RICO requires proof of an enterprise, whereas Continuing Criminal Enterprise, using the term in a different context, makes no such requirement of proof. Although defendant argues that the two statutes employ the term "enterprise" in the same context, we do not agree. In a substantive or conspiracy RICO prosecution, the government has the burden of showing the existence of an enterprise that affects interstate commerce. *United States v. Phillips,* 664 F.2d 971 (5th Cir.1981). The enterprise is proven by the existence of a continuing organization and by evidence that members function as a continuing unit. *United States v. Phillips, supra, quoting United States v. Turkette,* 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). Moreover, the government must show where the enterprise was furthered through a pattern of racketeering activity.

In contrast, § 848 merely requires proof that the defendant undertook a series of violations in concert or in conspiracy with five or more persons. The existence of an enterprise is not a required element. *United States v. Phillips,* 664 F.2d at 1013–14. Additionally, there is no requirement that the objective under § 848 be to further the group. The commission of the violations is sufficient.

■ The untenability of defendant's position is further manifested by the dearth of case law to support his claim that RICO is a lesser included offense of § 848. The only case which has squarely addressed this issue conclusively found that RICO is not a lesser included offense of § 848. In *United States v. Phillips, supra:*

> [w]e conclude that RICO counts are not lesser included offenses of the § 848 count. Both the substantive RICO and RICO conspiracy counts require proof of facts and elements not required to be proved under § 848, even though there is a substantial overlap in the proof offered to establish the crime.

664 F.2d at 1014.

*See also United States v. Webster,* 639 F.2d 174 (4th Cir.1981), *cert. denied,* 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982); *United States v. Mannino,* 635 F.2d 110 (2d Cir.1980) (double jeopardy-same offense problems were not discussed where RICO and § 848 charges were brought against defendant in the same indictment).

### IV.

### BURDEN OF PROOF AT EVIDENTIARY HEARING

■ Finally, Sinito argues that the government failed to meet its burden of proof at the evidentiary hearing. In particular, Sinito claims the government failed to offer testimonial or documentary evidence to rebut his claim that he was being twice prosecuted for the same offense. We do not agree with that argument. In *United States v. Jabara,* 644 F.2d 574, (6th Cir. 1981), this Court held that it was "appropri-

ate for a trial court, confronted with a non-frivolous double jeopardy claim to shift to the government the burden of proving, by a preponderance of the evidence, that it is not seeking to prosecute the same offense a second time." Apparently, defendant would have this Court require the government to present a certain number of witnesses or specific amount of evidence in order to carry its burden of proof. This, we will not do. As the court recognized in *United States v. Stricklin,* 591 F.2d 1112 (5th Cir.), *cert. denied,* 444 U.S. 963, 100 S.Ct. 449, 62 L.Ed.2d 375 (1979):

> [o]nce the burden of persuasion has shifted to the government ... the government is not compelled to come forward with any particular kind of evidence. It may present, however, much or little evidence as it deems advisable, subject, of course, to dismissal of the indictment if not enough evidence to rebut the defendant's prima facie showing is introduced.

591 F.2d at 1119.

Upon consideration of the parties' briefs, the testimony adduced at the hearing, the exhibits submitted into evidence, the facts delineated above and an in camera inspection of the transcripts of the proceedings before two grand juries which found probable cause to issue the indictments, the trial judge found the government had met its burden and that Sinito's motion was without merit. We agree. Accordingly, we affirm the pretrial order of the district court, thereby allowing the government to proceed to trial.