**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0815n.06

No. 13-4379

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Oct 28, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| DEBORAH L. KISTNER, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before:  KEITH, MOORE, and STRANCH, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  Deborah Kistner participated in three separate but related mortgage fraud conspiracies from 2006 to 2010.  On appeal, she claims that her trial counsel failed to provide her with constitutionally effective assistance.  Because her claims are meritless, we **AFFIRM** the judgment of the district court.

**I.  BACKGROUND**

Beginning in 2006, Kistner worked with real estate agent Jeffrey Corry and mortgage broker David Brentley in executing a mortgage kickback scheme in central Ohio.  *See* R. 170 (Sentencing Hr'g Tr. at 30–32) (Page ID #1031–33) (describing the Ohio Conspiracy).  Under this scheme, Corry and Brentley would recruit investors by promising that they could purchase property without a down payment and receive money at the property's closing.  Brentley would then secure mortgage financing for the investors by completing loan applications on their behalf.  *Id.* at 31–32 (Page ID #1032–33).  These applications would "contain[] a number of false

statements," in order to bring down the cost of the down payment. R. 48 (Superseding Indictment at ¶ 18) (Page ID #122). Concurrently, Corry would negotiate a sale price, which would be below the amount of the loan requested by Brentley. R. 170 (Sentencing Hr'g Tr. at 17) (Page ID #1018). Finally, Kistner would enter the picture, as the title agent to broker the sale between the investors and the property seller. *Id.* at 32 (Page ID #1033). The seller would collect a previously agreed upon profit and the remainder—the difference between the loan value and the property's sale price—would be "kickbacked" to the investors. Kistner eventually sought to profit from both sides of this conspiracy. She, along with her husband Mark, purchased six homes under this kickback scheme, thereby receiving income both as a title agent (through her commissions) and as an investor (through the mortgage kickbacks). PSR ¶ 40.

From March to August 2007, Kistner took part in a separate conspiracy, organized by Ryan Krivit and based out of Central and South Florida. *See* R. 171 (Plea Hr'g Tr. at 32) (Page ID #1114). In this scheme, property sellers would "agree[] to prices lower than the stated contract prices" that would be reported to various lending institutions. R. 170 (Sentencing Hr'g Tr. at 13) (Page ID #1014). The buyers would receive "a portion of the contract price." *Id.* The remainder of the loan would then be distributed to Kistner and her codefendants. This scheme was referred to at sentencing as the Florida Conspiracy. *Id.*

After the housing market went south, Kistner engaged in a third conspiracy, involving short sales of some of the properties she had originally purchased as part of the Ohio Conspiracy.

R. 171 (Plea Hr'g Tr. at 33) (Page ID #1115). Because Kistner's appeal does not discuss the short-sale conspiracy, we do not go into its details here.

In 2012, a federal grand jury returned a twenty-one count, superseding indictment against Kistner, her husband Mark, Philip Ennis (an employee of Kistner's), and Jaime Smith (a loan officer). R. 48 (Superseding Indictment) (Page ID #119). After four days of trial, Kistner decided to accept the government's plea agreement, pleading guilty to three counts of conspiracy to commit bank fraud, one count of bank fraud, and three counts of conspiracy to commit money laundering. R. 171 (Plea Hr'g Tr. at 8–12) (Page ID #1090–94). She was sentenced to sixty-six months of imprisonment. R. 170 (Sentencing Hr'g Tr. at 67) (Page ID #1068).

On appeal, Kistner alleges in her brief that she "was denied effective assistance when counsel did not challenge the fact [1] that one of the counts was barred by the statute of limitations, [2] that one of the counts was barred by double jeopardy and [3] failing to raise the issue of selective prosecution." Appellant Br. at 16. At oral argument, however, Kistner's counsel stated that he no longer wished to pursue the selective prosecution issue on direct appeal, opting instead to raise the issue later in a § 2255 proceeding. Under these circumstances, we do not address the issue of selective prosecution here.

## II. DISCUSSION

We review de novo claims of ineffective assistance of counsel. *United States v. Ferguson*, 669 F.3d 756, 761 (6th Cir. 2012). "In order to succeed on an ineffective assistance of counsel claim in the context of a guilty plea, a defendant must demonstrate that counsel's

performance was deficient and that the deficient performance prejudiced his defense such that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 762 (citing *Hill v. Lockhart,* 474 U.S. 52, 59 (1985); *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). "[I]n most cases[,] a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective assistance." *Massaro v. United States*, 538 U.S. 500, 504 (2003). However, in some cases, a court may entertain an ineffective-assistance claim on direct appeal where "the parties have adequately developed the record," making additional fact finding unnecessary. *United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995).

## A. Statute of Limitations

Kistner asserts that her trial counsel failed "to challenge count two in the indictment as [being] time barred," which, according to Kistner, "deals solely with the so called Waggoner-Chase property." Appellant Br. at 19, 22. While acknowledging "that the allegations in the indictment allege a time period of April 2006 to April of 2008," "[t]he fact of the matter is that the last act committed as part of any conspiracy related to this particular piece of property" occurred in June 2006. *Id.* at 21, 22. Under 18 U.S.C. § 3282(a), "the statute of limitations would have run in this case in June of 2011." *Id.* at 22. The grand jury returned its superseding indictment in June 2012; under Kistner's theory, count 2 would have been time-barred.

This argument is meritless. As an initial matter, Kistner is incorrect in asserting that count 2 "deals solely with the so called Waggoner-Chase property." In Kistner's superseding

indictment, counts 1 to 7 relate to the Ohio Conspiracy. Count 1 lays out the details behind the conspiracy, and charges Kistner with conspiracy to commit bank fraud from 2006 to 2008. Count 2 incorporates by reference much of count 1, while charging her with conspiracy to commit money laundering. These charges are followed by substantive fraud and money laundering charges—counts 3 through 7.

For conspiracies, like those charged in count 2, the statute of limitations does not begin to run until "the last overt act in furtherance of the conspiracy alleged in the indictment" occurs. *United States v. Smith*, 197 F.3d 225, 228 (6th Cir. 1999). That date is not June 2006, but April 2008, when the Kistners committed money laundering with respect to their purchase of the Tara Glen property. R. 48 (Superseding Indictment at ¶ 37) (Page ID #128). Count 2 was not time-barred. Therefore, trial counsel did not provide ineffective assistance on this ground.

## B. Double Jeopardy

Kistner also alleges that her trial counsel "fail[ed] to file a motion based upon double jeopardy." Appellant Br. at 27. According to Kistner, "Count 16 [of the superseding indictment]. . . mimicked [the language of] Count 1 . . . . These [sic] conspiracies contained in these two counts are almost identical save the adding of some additional players. Arguably, this violates the Fifth Amendment prohibition against double jeopardy." *Id.* at 28. This argument is meritless.

In rejecting Kistner's double-jeopardy claim, we are guided by our decision in *United States v. Sinito*, 723 F.2d 1250 (6th Cir. 1983). In that case, we applied a "totality of the

5

circumstances test" to determine whether two conspiracies actually arose from a single conspiracy. *Id.* at 1256. This test requires the district court "to consider the elements of: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place." *Id.* We determined that "[w]here several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses." *Id.* at 1256–57.

The first factor, time, weighs slightly in Kistner's favor. Counts 16 through 21 of the superseding indictment relate to the Florida Conspiracy. Counts 1 through 7 relate to the Ohio Conspiracy. The two conspiracies do overlap: the Florida Conspiracy took place between March and August 2007, and the Ohio Conspiracy took place between September 2006 and April 2008.

The second factor, however—those persons acting as co-conspirators—clearly weighs against Kistner. Kistner's own brief acknowledges that though the Ohio and Florida Conspiracies occurred during the "same time frame" and arguably involved the "same act," they nonetheless involved "different players." Appellant Br. at 28. The Florida Conspiracy was organized by Ryan Krivit, and involved mortgage brokers, loan officers, and investors in South and Central Florida. PSR at ¶¶ 43–46. The Ohio Conspiracy, on the other hand, involved an entirely different set of associates. *Id.* at ¶¶ 35–41.

On its face, the third factor, the statutory offenses charged, points in Kistner's favor. Both count 1 and count 16 involved conspiracy to commit bank fraud. Yet, in this case, the fact that these counts involved the same offense does not give rise to a double-jeopardy claim. It is simply a recognition that Kistner (successfully, for a time) operated in Florida.

Turning to the fourth factor, the working mechanics of the two offenses are materially different from one another. In the Ohio Conspiracy, Kistner and other co-conspirators received a fixed return for their services, with the property investors retaining the bulk of the profits. R. 48 (Superseding Indictment at ¶ 26) (Page ID #124). On the other hand, in the Florida Conspiracy, the property investors received a fixed return, with the profits largely going to Krivit, Kistner, and other mortgage brokers and real estate agents. *Id.* at ¶ 77 (Page ID #143). In other words, Kistner stood to gain—and did in fact gain—a far greater return from her participation in the Florida conspiracy. *See* PSR at ¶ 39, 43.

Finally, the last factor—the places where the events alleged in the conspiracy took place—clearly argues against a finding of double jeopardy. The difference here is self-evident: one conspiracy took place in Ohio, the other in Florida.

After taking the *Sinito* factors into consideration, we find that Kistner's claim fails on its face. As with her statute-of-limitations claim, Kistner's trial counsel did not fall below an objective standard of reasonableness by failing to raise a double-jeopardy claim in the proceedings below.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's judgment.