**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 17a0305n.06

**Case No. 15-1666**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jun 01, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| VINOD PATEL, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | |
| | ) | O P I N I O N |

BEFORE:   COLE, Chief Judge; BOGGS and SILER, Circuit Judges.

COLE, Chief Judge.  Vinod Patel appeals his sentence for conviction of health care fraud, in violation of 18 U.S.C. § 1349, and conspiracy to offer, pay, solicit, and receive health care kickbacks, in violation of 18 U.S.C. § 371.  Contrary to Patel's assertions, the convictions are not multiplicitous, and the district court did not abuse its discretion in calculating the amount of loss that Patel must pay in restitution.  But the district court failed to make the factual findings required for sentencing under Rule 32 of the Federal Rules of Criminal Procedure.  We therefore vacate Patel's sentence and remand to the district court for resentencing.

## I. BACKGROUND

Vinod Patel and his brother Babubhai Patel[1] owned First Michigan Home Health Care ("First Michigan"), a company that purported to provide health services for homebound individuals. In reality, First Michigan defrauded Medicare, Medicaid, and health insurance companies by billing for, but not dispensing, prescription drugs and by submitting home-health-care claims that were based on kickbacks or services that were medically unnecessary.

Patel added patients through referrals from physicians and paid the physicians kickbacks in return. Patel also hired marketers to find people with Medicare coverage and offered those people prescription drugs, such as Vicodin, Soma, and Xanax, if they would meet with a physician on First Michigan's payroll. Patel then paid the physicians to order home-health services from First Michigan for the purported patients. First Michigan then confirmed that the patients were eligible for services and submitted the requests to Medicare. Patel worked closely with a physician's assistant named James Burdette. Burdette met with patients and prescribed Vicodin, Soma, and Xanax for them and called the prescriptions in to pharmacies that Babubhai owned and operated, such as Tri-City Apothecary and Rapid Drugs. Burdette also prescribed non-narcotic medications, but the patients rarely received these. Instead, the medications were billed to Medicare but not dispensed.

On August 2, 2011, Babubhai was arrested as part of a round of arrests. That day, Patel shut down the operation. However, in March 2013, Patel was arrested as part of a second round of arrests. A jury convicted Patel of conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349, and conspiracy to offer, pay, solicit, and receive health care kickbacks, in violation of 18 U.S.C. § 371.

---

[1] Throughout this opinion, we refer to the Appellant by his last name, Patel, and refer to his brother by his first name, Babubhai.

The presentence report ("PSR") concluded that, under the United States Sentencing Guidelines, Patel had an offense level of 31 and a criminal history category of I. The PSR recommended a range of 108–135 months' imprisonment. Patel's offense level was calculated after various adjustments, including a 20-level upward adjustment for intended loss. The PSR attributed an intended loss of $8,072,955 to Patel. That total intended loss was based on two amounts: the total amount billed by First Michigan, $7,238,276, and the amount for all of the prescriptions written by Burdette and filled by Tri-City and Rapid Drugs, $834,679. Patel objected to the calculation of the loss, arguing that the government had failed to prove that any particular bills were fraudulent and that some of the bills were for legitimate medical services. Patel's Sentencing Memorandum said:

> There was a lot of testimony that fraudulent billing practices had occurred, but there were neither doctors nor patients that testified that any particular bill was fraudulent, nor did any witnesses testify that a particular bill was fraudulent. Thus, there is no basis for the increase on the base offense level.

(Patel Sentencing Mem., R. 1372, PageID 19545.) At the sentencing hearing, the government argued that the loss was properly calculated, and Patel's attorney rested on the previous written objections. The district court's only response was to say, "I think the person who wrote the presentence report got it right." (Sentencing Tr., R. 1508, PageID 20672.)

The district court sentenced Patel to seventy-eight months' imprisonment for the health-care-fraud conspiracy and sixty months' imprisonment for the kickback conspiracy, with the two sentences to run concurrently. The district court also ordered Patel to pay $7,238,276 in restitution. Patel appealed his sentence.

## II. ANALYSIS

### A. Multiplicity

Patel argues that his indictment was multiplicitous insofar as it charged him with two separate conspiracies rather than a single, multi-faceted conspiracy. Whether an indictment is multiplicitous is a legal question that this court reviews de novo. *United States v. Swafford*, 512 F.3d 833, 844 (6th Cir. 2008). We review for clear error a lower court's finding of fact that the government has proven by a preponderance of the evidence that multiple conspiracies existed. *In re Grand Jury Proceedings*, 797 F.2d 1377, 1380–81 (6th Cir. 1986).

An indictment is multiplicitous if it charges a single offense in more than one count. *Swafford*, 512 F.3d at 844. A multiplicitous indictment violates the Double Jeopardy Clause of the Fifth Amendment. U.S. CONST. amend. V ("No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb."). To determine whether convictions under two statutes are actually one offense, a court must look to "whether Congress intended to punish each statutory violation separately." *Pandelli v. United States*, 635 F.2d 533, 536 (6th Cir. 1980). If the answer is not clear on its face, "the general test for compliance with the double jeopardy clause looks to 'whether each provision requires proof of a fact which the other does not.'" *Swafford*, 512 F.3d at 844 (emphasis omitted) (quoting *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). We have previously used the *Blockburger* test to decide that convictions for violations of § 1349 and § 371 are not multiplicitous. *United States v. Fowler*, 819 F.3d 298, 308 n.4 (6th Cir. 2016). Other circuits have done the same. *See, e.g.*, *United States v. Sanjar*, 853 F.3d 190, 202 (5th Cir. 2017); *United States v. Moran*, 778 F.3d 942, 964 (11th Cir. 2015); *United States v. Njoku*, 737 F.3d 55, 67–68 (5th Cir. 2013); *United States v. Jones*, 733 F.3d 574, 584 (5th Cir. 2013).

We apply the *Blockburger* test to conclude that Patel's indictment was not multiplicitous because each statute requires proof of a fact that the other does not. Conspiracy to commit health-care fraud requires some fraudulent act. *See* 18 U.S.C. §§ 1347, 1349. But the kickback conspiracy statute prohibits two or more persons from conspiring to commit "*any* offense against the United States." *See* 18 U.S.C. § 371 (emphasis added). Additionally, § 371 requires proof of an overt act, and § 1349 does not. *See* 18 U.S.C. §§ 371, 1349.

Patel does not contest the result under *Blockburger* and instead argues that we should forgo the *Blockburger* test and apply the totality of the circumstances test of *United States v. Sinito*, 723 F.2d 1250 (6th Cir. 1983). However, this argument is foreclosed by *Fowler*, where we decided that the *Blockburger* test should be applied when determining whether convictions for violations of § 1349 and § 371 are multiplicitous. *Fowler*, 819 F.3d at 308 n.4.

Additionally, *Sinito* is factually distinguishable from this case. In *Sinito*, the prosecution charged the defendant with two conspiracies under the same statute, 18 U.S.C. § 1962. 723 F.2d at 1253. The *Sinito* court's concerns about "overzealous prosecutors" who could "carv[e] up one conspiracy into two . . . offenses" are understandable in that situation. *Id.* at 1256. However, no such concerns exist when, as in the present case, the defendant is charged under separate conspiracy statutes. Even if the conspiracies arose out of the same conduct, that does not offend the Double Jeopardy Clause. After all, the multiplicity doctrine "draws a crucial distinction between multiple punishments for the same *conduct* (permissible) and multiple punishments for the same *offense* (impermissible)." *White v. Howes*, 586 F.3d 1025, 1027 (6th Cir. 2009). When Congress intends to impose multiple punishments for the same conduct, the "imposition of such sentences does not violate the Constitution." *United States v. Berryhill*, 587 F. App'x 310, 313–14 (6th Cir. 2014).

**B. Amount-of-Loss Calculation**

Patel challenges the procedural reasonableness of his sentence by arguing that the district court failed to make the factual findings required by Rule 32 of the Federal Rules of Criminal Procedure.

A district court commits procedural error if the district court fails to calculate or improperly calculates the Guidelines range. *Gall v. United States*, 552 U.S. 38, 51 (2007). Under section 2B1.1(b)(1) of the Sentencing Guidelines, a defendant's offense level increases based on the amount of loss caused by his crime. *United States v. Behnan*, 554 F. App'x 394, 398 (6th Cir. 2014). So, an improper calculation of the amount of loss is procedural error under *Gall*. In a fraud case, we review the amount of loss calculated by the district court for clear error and the methodology used to calculate the loss de novo. *United States v. Washington*, 715 F.3d 975, 984 (6th Cir. 2013).

Under Rule 32 of the Federal Rules of Criminal Procedure, a sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute." Fed. R. Crim. P. 32(i)(3)(B). We require "'literal compliance' with Rule 32, so when matters are contested the court must explain its calculation methods." *United States v. Poulsen*, 655 F.3d 492, 512–13 (6th Cir. 2011) (quoting *United States v. Nelson*, 356 F.3d 719, 722 (6th Cir. 2004)). In this calculation, a court "need only make a reasonable estimate of the loss." U.S.S.G § 2B1.1 cmt. n.3(C). In other words, a court "does not have to establish the value of the loss with precision; it simply needs to publish the resolution of contested factual matters that formed the basis of the calculation." *Poulsen*, 655 F.3d at 513 (internal quotation marks omitted). So, we must determine "(1) whether the amount was in dispute; (2) if it was in dispute, whether

the district court adequately ruled on the disputed amount; and (3) if the district court ruled, whether the factual findings indicate clear error." *Id.*

We first examine whether the amount was in dispute. A defendant can put the amount in dispute by introducing "some evidence beyond a bare denial that calls the reliability or correctness of the alleged facts into question." *United States v. Lang*, 333 F.3d 678, 682 (6th Cir. 2003) (citation omitted). Here, the PSR attributed an intended loss of $8,072,955 to Patel based on (1) the total amount billed by First Michigan and (2) all of the prescriptions written by Burdette and filled by Tri-City and Rapid Drugs. In his Sentencing Memorandum, Patel objected to whether the government met its burden to prove that all such charges were fraudulent by a preponderance of the evidence. Specifically, Patel argued that it was the government's burden to prove the amount of loss and that the loss must be precisely attributable to Patel's conduct. However, *Lang* also required Patel to offer some evidence to rebut the PSR.

Patel offers the following from his Sentencing Memorandum as putting the amount in dispute:

> There was a lot of testimony that fraudulent billing practices had occurred, but there were neither doctors nor patients that testified that any particular bill was fraudulent, nor did any witnesses testify that a particular bill was fraudulent. Thus, there is no basis for the increase on the base offense level.

(Patel Sentencing Mem., R. 1372, PageID 19545.) Patel notes that no witness testified that any specific bills were fraudulent. Because the PSR uses the total amount billed as the basis for its loss calculation, Patel's evidence that the government failed to prove that all the bills were fraudulent is sufficient to call the correctness of the PSR's calculation into question. We, therefore, conclude that Patel sufficiently put the amount of loss in dispute and triggered Rule 32.

The government does not contest that the district court failed to make proper factual findings under Rule 32. The district court's only statement after hearing Patel's objection to the amount of loss was: "I think the person who wrote the presentence report got it right." (Sentencing Tr., R. 1508, PageID 20672). This is not an adequate factual finding under Rule 32 and violates the Sixth Circuit principle that a "court may not merely summarily adopt the factual findings in the presentence report." *United States v. White*, 492 F.3d 380, 415 (6th Cir. 2007). The district court was required to explain the basis for its resolution of contested factual matters and failed to do so. Accordingly, the district court committed procedural error by not making factual findings under Rule 32.

**C. Restitution**

Patel asserts that the loss calculation underlying the restitution amount was in error. We review preserved claims of error in calculating restitution for abuse of discretion. *See Fowler*, 819 F.3d at 304. We conclude that the district court did not abuse its discretion in calculating the amount of restitution.

"An abuse of discretion occurs when the reviewing court is left with the 'definite and firm conviction that the trial court committed a clear error of judgment.'" *United States v. Hunt*, 521 F.3d 636, 648 (6th Cir. 2008) (quoting *Dubay v. Wells*, 506 F.3d 422, 431 (6th Cir. 2007)). The district court does not need to make specific factual findings in imposing restitution. *United States v. Jackson-Randolph*, 282 F.3d 369, 386 (6th Cir. 2002). Additionally, the Mandatory Victims Restitution Act of 1996 gives the district court latitude to determine the amount of the victim's losses. *See* 18 U.S.C. § 3664(f)(1)(A) ("[T]he court shall order restitution to each victim in the full amount of each victim's losses *as determined by the court . . . .*") (emphasis added).

The amount of restitution ordered by the district court does not indicate an error of judgment. The order requires Patel to pay $7,238,276, which is the total amount of bills submitted to Medicare/Medicaid from First Michigan between January 1, 2007, and August 2011. The commentary to the Guidelines says that "the aggregate dollar amount of fraudulent bills submitted to the Government health care program shall constitute prima facie evidence of the amount of the intended loss." U.S.S.G. § 2B1.1 cmt. n.3(F)(viii). It is not a clear error of judgment to order an amount that is explicitly permissible under the Guidelines. Therefore, the district court did not abuse its discretion in calculating the amount of restitution.

### III. CONCLUSION

The district court failed to make proper factual findings under Rule 32. Accordingly, we vacate Patel's sentence and remand to the district court for resentencing. We affirm the remainder of the district court's judgment.