UNITED STATES of America,
Plaintiff–Appellee,

v.

Roger BENTON (87–5355) and, Marion
D. Campbell (87–5361),
Defendants–Appellants.

Nos. 87–5355, 87–5361.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 5, 1988.

Decided July 22, 1988.

---

Arthur Brooks (argued), Lexington, Ky., for defendant-appellant in No. 87–5355.

James Arehart (argued), Asst. U.S. Atty., Lexington, Ky., for plaintiff-appellee in No. 87–5355.

William E. Johnson (argued), J. Gurthie True, Frankfort, Ky., for defendant-appellant in No. 87–5361.

Louis DeFalaise, U.S. Atty., James E. Arehart (argued), Lexington, Ky., for plaintiff-appellee in No. 87–5361.

Before GUY and BOGGS, Circuit Judges, and PECK, Senior Circuit Judge.

BOGGS, Circuit Judge.

Defendants-appellants Roger Benton (Benton) and Marion D. Campbell (Campbell) were indicted in federal district court, and tried jointly before a jury, on one count of conspiracy to commit extortion, and several substantive counts of extortion under the Hobbs Act, 18 U.S.C. § 1951,[1] and one

---

1. 18 U.S.C. § 1951 states as follows:

"(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

(b) As used in this section—

(1) The term "robbery" means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term "extortion" means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right.

(3) The term 'commerce' means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction."

count of conspiracy to distribute cocaine and marijuana under 21 U.S.C. § 846.[2] Campbell was acquitted of the Hobbs Act violations, but the jury was unable to reach a verdict on the conspiracy to distribute drugs count under 21 U.S.C. § 846. Benton, however, was found guilty on all counts.

The district court denied Campbell's motion to dismiss the superseding indictment returned by the government, after the district court declared a mistrial because of the hung jury. Campbell essentially argues that the charge of conspiracy to commit extortion under the Hobbs Act, 18 U.S.C. § 1951, on which he was acquitted, is the "same offense" for double jeopardy purposes as the charge of conspiracy to distribute cocaine and marijuana under 21 U.S.C. § 846. Campbell also argues that collateral estoppel, as part of the Fifth Amendment's guarantee against double jeopardy, prevents the government from constitutionally retrying him on the conspiracy to distribute cocaine count in the superseding indictment. We affirm the district court order, permitting the government to retry Campbell on the conspiracy to distribute cocaine count under 21 U.S.C. § 846 in the superseding indictment.

Benton, on the other hand, appeals his convictions on all counts of extortion under the Hobbs Act, 18 U.S.C. § 1951, and conspiracy to distribute cocaine and marijuana under 21 U.S.C. § 846. Benton essentially argues that the district court erred in admitting evidence of certain "prior bad acts" pursuant to Fed.R.Evid. 404(b) and that the district court made other major evidentiary errors. We find that the district court committed no reversible error, and affirm Benton's conviction on all counts.

I

On March 12, 1986, an indictment was returned in district court. Count 1 charged Campbell and Benton with conspiring, with co-defendants Gene Allen, Titus Frederick and Steve Allen, during the period of January 1, 1985 through February 11, 1986, to obstruct, delay, and affect commerce by extortion in obtaining money and cocaine from an undercover FBI agent, McNeal, under color of official right. Count 1 recited that at the time of this conspiracy Campbell was Captain of the Kentucky State Police, and Benton was the Sheriff of Morgan County, Kentucky. Count 1 generally charged that Campbell received payoffs from undercover agent McNeal through Titus Frederick and Gene Allen. Allen was then Morgan County Judge. Frederick knew each co-defendant. In return for the payoffs, Campbell and Benton allegedly protected a cocaine distribution scheme facilitated by agent McNeal in Morgan County, Kentucky and in other states, and promised to inform McNeal of any state or federal investigations.

Counts 5, 8, and 15 charged Campbell and other co-defendants with various substantive counts of extortion under 18 U.S.C. § 1951. Counts 6, 9, and 12 charged Benton with various substantive counts of extortion under color of official right.

Count 16 charged that, during the period January 1, 1985 through February 11, 1986, Campbell, Benton, Frederick, Allen and his son Steve Allen, attempted and conspired to distribute and possess with intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 846.

Testimony at the trial indicated that the defendants Allen, Benton, Campbell, and Frederick were interested in establishing a drug operation in Morgan County, Kentucky. They would import drugs from Florida into Morgan County and extort money from individuals selling drugs in return for "protection" and the promise that law enforcement officials would not interfere with their drug sales.

Defendant Allen testified at trial that by late 1983, Campbell, a long time friend, had

---

**2.** 21 U.S.C. § 846 provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter is punishable by imprisonment or fine or both which may not exceed the maximum punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy." Distribution of cocaine and marijuana is an offense under 21 U.S.C. § 846.

come to him and indicated that drug dealers were making a good deal of money, and that he desired to make some money before he retired. This aspect of Allen's testimony was corroborated by the testimony of Lester H. Burns, Jr. Allen testified that the plan was to obtain drugs through a crooked Deputy Sheriff in Okeechobee, Florida, and fly the drugs into Morgan County for sale and "split [the proceeds] four ways between [himself], and Roger Benton, Marion Campbell and Titus Frederick." Allen testified that every time he met with Campbell they discussed the drug business. Allen also testified that they approached Burns about financing some of the drug operations, but he refused and they turned their attention to agent McNeal who was posing as a drug dealer. According to Allen, McNeal agreed to supply the cocaine to him, and had also agreed to pay protection money to Allen, Benton and Campbell.

Defendant Frederick testified that in the Fall of 1984, Allen and Campbell came to his house and indicated that "they wanted to get into the dope business and wanted me to help them find a supplier for it." Consistent with Allen's testimony, Frederick testified that Allen and Campbell discussed the possibility of involving attorney Lester Burns to finance a cocaine deal because they understood that he had the money to do it. He further testified that Allen and Campbell wanted to become involved in the drug business because they thought that Frederick knew the people who could get them started. Frederick testified that he, Allen, and Campbell went to Florida to ask Burns to finance their dope business, but Campbell and Burns fell into fundamental disagreement. According to Frederick's testimony, Frederick and Allen discussed supplying cocaine to Morgan County with agent McNeal. Frederick testified that he arranged a meeting of Benton, Allen, himself and McNeal. Agent McNeal testified that Captain Campbell was present at the premises of Lester Burns where the discussion about cocaine took place.

At trial, McNeal testified that on October 30, 1985, the defendants made plans for flying cocaine into Morgan County from somewhere in Florida. He testified that Frederick and Allen had agreed that McNeal should pay $5,000 a month to Allen, Benton, Campbell, and Frederick for protection, and to keep from getting arrested. The next day he paid Frederick $2,500 for protection from Campbell, and Frederick told McNeal that he would give that money to Campbell. McNeal testified that on November 7, 1985 he explained everything to Benton: that he wanted to fly cocaine into Morgan County, and that he wanted Benton's cooperation and protection. Both Benton and Frederick assured McNeal that he would be notified if he were in danger of being arrested.

McNeal testified that on November 20, 1985 he flew two kilos of cocaine into Morgan County and distributed it at defendant Allen's house to purported buyers who were FBI undercover agents from Indiana. McNeal testified that on December 4, 1985, he went to Frederick's home in Morgan County, and paid Allen $2,500 for protection, Frederick $2,500, and paid $2,500 to be given to Campbell. Before leaving Frederick's home, McNeal telephoned Benton, and agreed to meet on a highway at which time McNeal paid him $2,500 for protection to fly drugs in and out of a Morgan County airport. McNeal testified that at that time he told Benton that he had flown in another load of cocaine, and that everything went well.

On January 9 and 10, 1986, McNeal was in Okeechobee, Florida, where he paid Allen $5,000 for protection, and $5,000 to be given to Campbell. On January 16, 1986, McNeal paid Benton $5,000 for protection. Benton had gone to Florida specifically for the purpose of meeting McNeal and getting paid.

Benton testified that he was conducting his own investigation, and that was the reason for his taking the money from agent McNeal. Campbell made similar statements. However, Sergeant Evans of the Kentucky State Police testified that he worked closely with Campbell, and that Campbell never told him about using Allen or Frederick in the "investigation." Evans

also testified that Campbell asked him to testify to having had conversations with Campbell which never happened. Charles Perry, Chief of the West Liberty Police Department, testified that he never was made aware of any investigation by Benton about drugs or payoffs in Morgan County. Robert Hutchinson, the Commonwealth Attorney of Morgan County, testified that Benton never had any conversation with him about an investigation Benton was conducting.

On February 5, 1987, the jury returned verdicts of not guilty as to Campbell on Counts 1, 5, 8, and 15 (all charging extortion). As to Count 16 (charging conspiracy to distribute drugs), the jury was unable to reach a verdict. The district court thus declared a mistrial as to Count 16. The jury found Benton guilty on all counts of conspiracy to commit extortion, substantive counts of extortion, and conspiracy to distribute drugs.

On February 17, 1987, the government moved to set a new trial date for Campbell on Count 16. Campbell moved to dismiss Count 16 on double jeopardy grounds.

On March 4, 1987, the United States returned a superseding indictment, charging Campbell with the same things originally charged in Count 16 of the initial indictment, but deleted any allegation respecting marijuana distribution. The superseding indictment, however, enlarged the time frame of the drug conspiracy charge. The original indictment charged actions from January 1, 1985 and continuing up to and including February 11, 1986. The new indictment charges the time from November 1, 1983, continuing up to and including March 12, 1986, and deletes any allegations respecting marijuana. It also deleted defendants Steve Allen, and already convicted Benton. Testimony at trial indicated that Campbell had gone to Florida in late 1983, and had discussed the possibility of establishing a drug connection with certain Floridians.

We address separately the contentions of Campbell and of Benton.

## II

### A. CAMPBELL

#### a. The Superseding Indictment

■ Campbell argues that since jeopardy had terminated as to the original indictment, the superseding indictment returned by the government charging a violation of 21 U.S.C. § 846 is improper. In his view, a superseding indictment returned after a district court has declared a mistrial because of a hung jury on a count or counts in an indictment violates his due process rights under the federal constitution.

In *United States v. Corona*, 804 F.2d 1568, 1571 (11th Cir.1986), the Eleventh Circuit held, however, that the return of a superseding indictment following a hung jury does not violate the double jeopardy clause, even if that superseding indictment changed the dates on which the crime was alleged to have been perpetrated. There, the government "add[ed] six months at the beginning of the eight year conspiracy and twelve months at the end...." *Id.* at 1569. In our case, the government enlarged the time frame on the conspiracy charge under 21 U.S.C. § 846 from January 1, 1985 through February 11, 1986 to November 1, 1983 through March 12, 1986. The fact that the government in our case deleted certain defendants, and deleted any conspiracy charge respecting marijuana, makes no difference from a constitutional standpoint, as the government may even charge additional conspiracy and substantive counts in a superseding indictment. *Id.* at 1571.

On the other hand, the government argues that *Richardson v. United States*, 468 U.S. 317, 104 S.Ct. 3081, 82 L.Ed.2d 242 (1984) bars any double jeopardy claim that Campbell advances regarding the superseding indictment. Since the original jeopardy never terminated, the government maintains, any retrial of the charge contained in Count 16, or a reformulated charge in the superseding indictment, will be merely a continuation of the original prosecution and within the original jeopardy.

In *Richardson*, the defendant was acquitted of one substantive narcotics viola-

tion under 21 U.S.C. § 841(a)(1), and the jury was unable to reach a verdict either on another 21 U.S.C. § 841(a)(1) violation or on a count of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846. The district court declared a mistrial as to these two remaining counts, and scheduled a retrial. The defendant argued on appeal that the evidence was legally insufficient to convict and, in any case, that the double jeopardy clause prevented retrial following a hung jury.

The Supreme Court held that the "Double Jeopardy Clause by its terms applies only if there has been some event, such as an acquittal, which terminates the original jeopardy." 468 U.S. at 325, 104 S.Ct. at 3086. "[A] hung jury is [not] the equivalent of an acquittal." *Ibid.* (footnote omitted). Thus, the Court stated that "a trial court's declaration of a mistrial following a hung jury is not an event that terminates the original jeopardy to which petitioner was subjected." *Id.* at 326, 104 S.Ct. at 3086. This disposes of the contention that the government may not prosecute a defendant under a superseding indictment returned after a hung jury.

■ *Richardson* did not, however, preclude the application of other double jeopardy doctrines to Campbell's circumstances. The fact that jeopardy has not terminated does not necessarily preclude the application of the "same agreement or conspiracy" framework developed in *United States v. Sinito*, 723 F.2d 1250 (6th Cir. 1983), or the "same offense" doctrine established in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), or collateral estoppel as stated in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), to the situation in which a defendant has been acquitted on certain counts, and a hung jury has occurred on other counts. Indeed, neither *Sinito*, nor *Blockburger*, nor *Ashe* was mentioned in *Richardson*.

### b.  Double Jeopardy Based on a Single Conspiracy?

■ The key question for double jeopardy purposes is whether the conspiracy in Count 1 of the indictment, on which Campbell was acquitted, and the conspiracy in Count 16 of the indictment, on which the jury was hung, were the same or both part of a single agreement. If the conspiracy charged in Count 16 is the same, or part of the one charged in Count 1, Campbell's motion to dismiss must be granted. *In Re Grand Jury Proceedings*, 797 F.2d 1377, 1380 (6th Cir.1986). In determining this issue, the district court applied the "totality of circumstances" test set out in *United States v. Sinito*, 723 F.2d 1250, 1256 (6th Cir.1983) to the question of whether a single conspiracy or multiple conspiracies existed.

In *Sinito*, we adopted a "totality of circumstances" test for determining whether "separate conspiracies charged in different grand jury indictments are, in reality, one for the purposes of the fifth amendment prohibition against double jeopardy." 723 F.2d at 1253. That test consisted of five elements: (1) time; (2) persons acting as co-conspirators; (3) the statutory offenses charged in the indictments; (4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and (5) places where the events alleged as part of the conspiracy took place. 723 F.2d at 1256. We stated that "[w]here several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses." 723 F.2d at 1256–57 (citation omitted).

In *Sinito*, the defendant contended that two counts of a seventy-count indictment duplicated a previous eighteen-count indictment on which he had been convicted. On April 10, 1981, defendant Sinito and his cousin, Charles Sinito, were charged in an eighteen-count indictment with a RICO conspiracy, 18 U.S.C. § 1962(d), the completed substantive RICO offense, 18 U.S.C. § 1962(c), conspiracy to make extortionate extensions of credit, 18 U.S.C. § 892, the collection of extensions of credit by extortionate means, 18 U.S.C. § 894 and, as to defendant alone, income tax evasion, 26

U.S.C. § 7201, and filing of a false tax return, 26 U.S.C. § 7206. The indictment stated that the activity occurred between March 1, 1974 and January 30, 1979. The jury found defendant Sinito guilty of a RICO conspiracy and of several substantive RICO violations.

On October 27, 1982, Sinito, along with four other individuals, were charged in a new seventy-count indictment. Count one charged Sinito, along with other defendants, with a RICO conspiracy in violation of 18 U.S.C. § 1962(c). Count two charged Sinito and other defendants with engaging in a continuing criminal enterprise involving the distribution and possession of illegal narcotics, and deriving substantial income therefrom in violation of 21 U.S.C. § 848. Sinito argued that the second indictment should be dismissed because he had already been convicted a year earlier of a RICO conspiracy offense. Sinito essentially argued that there was but one conspiracy, so that prosecution under the second indictment violated the double jeopardy clause. 723 F.2d at 1254.

Applying the five-factor test, we held that there were two separate conspiracies. As to the first factor, we found that the time periods of March 1, 1974 through January 30, 1979, and March 1978 through October 28, 1982, were sufficiently different, despite some overlap, to suggest different conspiracies. As to the second factor, we held that each indictment involved a different set of participants, excepting defendant Sinito. As to the third factor, we found that although both indictments charged violations of the same statute, 18 U.S.C. §§ 1962(c) and (d), the underlying statutory offenses were different. The first indictment was based on loansharking, whereas the second indictment was based on a pattern of racketeering: murder, drug trafficking and illegal gambling. As to the fourth factor, we found that the overt act of loansharking was not the same as the overt acts of murder, gambling, drug trafficking, and obstruction of justice. We also found that the geographical locations charged as Northern District of Ohio, Eastern Division and elsewhere were the same, but that this was a factor

of "minimum significance." 723 F.2d at 1258–59.

We now apply the *Sinito* framework to Campbell's circumstances. The time period alleged in the indictment for Count 1 was the same as the time period alleged in the indictment for Count 16: January 1, 1985 continuing up to and including February 11, 1986. However, the superseding indictment charged that the conspiracy to violate 21 U.S.C. § 846 began on November 1, 1983 and continued up to and including March 12, 1986, which strongly suggests that the agreement for the commission of extortion was different from the agreement to violate federal drug distribution laws. The same persons were alleged to have acted as co-conspirators in Count 1 as in Count 16. However, the superseding indictment deleted defendant Steve Allen and already convicted Roger Benton. The statutory offenses are, in our view, more different than in *Sinito*, because they are based on different statutes, not simply on different underlying offenses. Count 1 charges a violation of the Hobbs Act, 18 U.S.C. § 1951, while Count 16 and the superseding indictment charge a violation of 21 U.S.C. § 846. Each statute requires a certain kind of agreement, but each is aimed at different evils. The overt acts charged in Count 1 are not comparable to anything in either Count 16, or the sole count of the superseding indictment, as a conspiracy to violate 21 U.S.C. § 846 does not require any overt acts. *United States v. Brock*, 782 F.2d 1442 (7th Cir.1986). Record testimony indicated that the defendants discussed extortion and drug distribution in both Morgan County, Kentucky and Florida.

Campbell quotes the testimony of McNeal and Allen, and the government's summation, as proof that the government was proceeding under a single agreement or conspiracy theory. The trial judge's charge to the jury, however, suggests that there were separate agreements or conspiracies. The trial judge stated that the position of the government was that Allen, Benton, Campbell, and Frederick "set up a plan to transport cocaine and marijuana to

Morgan County from Florida...." In our view, this suggests an agreement to transport illegal drugs violative of 21 U.S.C. § 846. The judge also stated that "payoffs or bribes would be made to Judge Allen, Sheriff Benton, and Captain Campbell, all local state officials." In our view, this suggests a separate agreement to take payoffs or bribes violative of the Hobbs Act, 18 U.S.C. § 1951. The trial judge stated that "[i]t is further the position of the United States that Titus Frederick and Gene Allen testified that both Campbell and Benton agreed to have controlled substances brought into Morgan County and they would profit thereby." The trial judge thus understood, in charging the jury, that the agreement to commit extortion was separate from the agreement to distribute drugs.

Notwithstanding Campbell's arguments, the district court correctly recognized that *United States v. Jabara*, 644 F.2d 574, 576–77 (6th Cir.1981) requires that the government show by a preponderance of the evidence that separate conspiracies existed. The district court found that "there was extensive testimony by several who said that they discussed with the defendant Campbell the fact that they were going to set up an operation for the distribution of cocaine and marijuana around the Morgan County area." We have previously indicated that "[t]he finding of fact by the lower court that the government had proven by a preponderance of the evidence that multiple conspiracies existed can be set aside only if it is clearly erroneous." *In Re Grand Jury Proceedings*, 797 F.2d at 1380–81. We find that the district court's factual conclusion is not clearly erroneous.

### c. Double Jeopardy Based on "Same Offense"

■ As his main argument, Campbell contends that the double jeopardy clause's protection against a second prosecution for the same offense after acquittal prevents his retrial on Count 16 or on the superseding indictment, both of which charge an attempt or conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. Essentially, Campbell argues that a § 846 conspir-

acy offense is the "same offense" for double jeopardy purposes as the Hobbs Act conspiracy offense of which Campbell was acquitted. The record shows that at no time did Campbell move for a dismissal of either count 1 or count 16 on the ground that they were duplicative. Campbell maintains that whether certain conduct constitutes the "same offense" for purposes of double jeopardy analysis depends on whether Congress intended that each statutory violation be a separate offense, relying on *Garrett v. United States*, 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). Campbell argues that determination of congressional intent involves a three-step process of (1) reviewing the plain language of the statutes; (2) reviewing the legislative history of the statutes; and (3) applying the judicial rule of statutory construction set out in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

After concluding that the plain language of the two statutes, and their respective legislative histories shed no light on the same offense analysis, Campbell turns to the final step of the process: statutory construction. He argues that the Supreme Court cases of *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) and *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980) have "modified the test originally set out in *Blockburger*." According to Campbell, the *Blockburger* test "had traditionally focused on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." Campbell argues that "*Whalen* and *Vitale* make clear, however, that in applying *Blockburger* the requisite statutory elements must be examined from the vantage point of the particular case before the court." Campbell stated that "[b]efore applying the *Blockburger* test they must narrow the applicable statutes to be analyzed until they include only the alternatives relevant to the case at hand."

Applying this fact-specific analysis, Campbell concludes that a conspiracy to violate 21 U.S.C. § 846 is a lesser included

offense of a conspiracy to violate 18 U.S.C. § 1951. We fundamentally disagree that the Supreme Court has necessarily changed the focus of *Blockburger* analysis from the statutory elements of the offenses argued to be the "same," to the particular facts alleged in the indictment,[3] or proffered as proof at trial, and thus we fully reject Campbell's fact-specific analysis.

Conspiracy to violate the Hobbs Act, 18 U.S.C. § 1951, requires the following elements:

(1) an agreement between two or more individuals,

(2) affecting interstate commerce,

(3) to obtain property from another,

(4) with consent,

(5) induced under color of official right.

Conspiracy to violate 21 U.S.C. § 846 by drug distribution requires the following elements:

(1) an agreement between two or more individuals to distribute

(2) illegal drugs such as cocaine, with

(3) intent to distribute.

The Supreme Court enunciated a test for determining whether two offenses are the same for double jeopardy purposes in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). There, the Court stated that:

where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.... (citations omitted) A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. (citations omitted)

*Id.* at 304, 52 S.Ct. at 182.

In *Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980),

the Supreme Court indicated that the *Blockburger* test "focuses on the proof necessary to prove the statutory elements of each offense, *rather* than on the actual evidence to be presented at trial." (emphasis supplied) The *Vitale* Court found this conclusion to be consistent with *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975) wherein the Court stated that "[i]f each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes." 447 U.S. at 416 n. 6, 100 S.Ct. at 2265 n. 6. In *United States v. Zackert*, 783 F.2d 677, 679 (6th Cir.1986) (per curiam) we held, consistent with Supreme Court precedent, that "the question is not whether one might be, or is, convicted on the same facts in a particular case; rather, the court looks to whether every violation of one statute entails a violation of another."

In our view, every violation of 18 U.S.C. § 1951 does not entail a violation of 21 U.S.C. § 846. Conspiracy to violate 18 U.S.C. § 1951 requires proof of an agreement to commit extortion under color of official right, and it also requires a showing of an effect on interstate commerce, neither of which is required for a conspiracy to violate 21 U.S.C. § 846. Drug conspiracy under 21 U.S.C. § 846 requires proof of an agreement to commit a federal drug offense, which is not a necessary element of a § 1951 conspiracy. Each offense requires proof of a different agreement, and the two statutes are aimed at different evils, extortion and drug distribution. Furthermore, as indicated above, conspiracy to violate 21 U.S.C. § 846 does not require proof of an overt act, while conspiracy to violate 18 U.S.C. § 1951 does require proof of an overt act.

Moreover, Campbell has failed to offer any evidence that Congress did not intend to allow separate punishment for the two

---

**3.** The *Whalen* Court made clear that, despite the dissenting view of then Justice Rehnquist at 445 U.S. 684, 699–714, 100 S.Ct. 1432, 1441–49, it did "... not in this case apply the *Blockburger* rule to the facts alleged in a particular indictment." 445 U.S. at 694 n. 8, 100 S.Ct. at 1439 n. 8.

different offenses. *United States v. Woodward,* 469 U.S. 105, 105 S.Ct. 611, 83 L.Ed.2d 518 (1985). Under *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981), legislative intent must in this respect be "clear."

Furthermore, in *United States v. Cylkouski,* 556 F.2d 799 (6th Cir.1977), the defendant was charged with two separate conspiracies, although the proof at trial overlapped. Following *Blockburger,* we held that although the evidence of the violations was substantially the same, there were two distinct and separate conspiracies. *Id.* at 801.

### d. Collateral Estoppel

■ Campbell argues that even if the two offenses are sufficiently different under *Blockburger* to permit prosecution for both, such successive prosecutions will still be barred in some instances where the second prosecution requires the relitigation of ultimate factual issues already resolved by the first. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). It is clear that the burden is on Campbell to prove by convincing and competent evidence that the fact sought to be foreclosed was necessarily determined by the jury against the government in the prior trial. *United States v. Gentile,* 816 F.2d 1157, 1162 (7th Cir.1987).

The district court found that "it is obvious that the jury could have found that the Defendant Campbell did not receive nor solicit any money, but nevertheless could have conspired to possess with intent to distribute or to distribute marijuana and cocaine." The district court further noted that there was "extensive testimony" by several witnesses who discussed such distribution with Campbell. We agree with the district court.

Under the leading case of *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), the Supreme Court held that collateral estoppel is a part of the constitutional guarantee against double jeopardy. When an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated by the same parties in any subsequent action. *Id.* at 443, 90 S.Ct. at 1194. If such issues of fact must be proven in the second trial in order to convict, then the entire prosecution is prohibited.

In *Ashe,* a defendant had been acquitted, on the basis of conflicting testimony, of robbing a poker game participant. The state sought to retry him before a new jury on whether he had robbed a different poker game participant but in the same place and at the same time. The Court held that the state could not constitutionally "present the same or different identification evidence in a second prosecution for the robbery of Knight in the hope that a different jury might find that evidence more convincing." 397 U.S. at 446, 90 S.Ct. at 1195.

Campbell's case is distinguishable from *Ashe* insofar as the jury, in acquitting Campbell on the Hobbs Act conspiracy charges, had not necessarily determined that he was not a member of any conspiracy to distribute drugs under 21 U.S.C. § 846, in the same sense as the *Ashe* Court found that the petitioner was not one of the robbers. At most, all that can be said about the jury's acquittal of Campbell on the Hobbs Act conspiracy charges, based on testimony in the record, is that the jury determined that Campbell had not agreed to commit extortion. Indeed, it is very difficult to determine the basis for an acquittal. An acquittal need not be based on any jury factual finding, as acquittals based on jury lenity can attest. Unless it can be said with definite assurance, and by clear evidence, that the jury found a fact in the defendant's favor, which is also a necessary element of the crime sought to be reprosecuted, *Ashe* will not assist a criminal defendant.

Essentially Campbell argues that since the jury determined that he was not a member of the conspiracy to extort under the Hobbs Act, 18 U.S.C. § 1951, he could not be retried for being a member of a conspiracy to distribute drugs in violation of 21 U.S.C. § 846. In making this argument, Campbell argues that there was only one agreement. We have already deter-

mined, however, that a jury could find that there was more than one conspiracy.

Even assuming that only one discussion among the criminal defendants occurred, the jury could have merely found, in our view, that Campbell had simply not agreed to commit extortion in violation of the Hobbs Act, 18 U.S.C. § 1951. Such a finding does not in any way foreclose the possibility that Campbell may have agreed to distribute drugs in violation of 21 U.S.C. § 846.

Therefore, we affirm the district court's decision to permit Campbell's retrial on the superseding indictment.

## B. BENTON

■ Benton maintains that the district court erred in permitting Gene Allen, then County Judge of Morgan County, to testify to certain "prior bad acts and crimes of Benton" which concerned bootlegging. Allen testified on behalf of the government that Benton and Allen had met in 1982, 1983 and 1984 for the purpose of forming a scheme to take payoffs and protection money from bootleggers in Morgan County in exchange for allowing the bootleggers to operate free from arrest and prosecution. Allen testified that he and Benton had received kickback money in the years 1982, 1983, and 1984. Benton maintains that there was no other corroborating evidence of these prior bad acts offered by the government.

At trial, Benton had defended himself on the theory that he was conducting an investigation of drug dealing in Morgan County. Under this theory, it was only natural that he would have been involved in accepting amounts of money and drugs from those persons he was investigating. What appeared to be criminal activity under federal law, he contends, was in reality part of an ongoing criminal investigation.

In defending himself in this way, Benton put in issue his intent or motive in accepting the money and drugs. Indeed, the government recognized this in specifically requesting the court's permission to introduce evidence tending to rebut Benton's defense theory, and the purported intent or motive implicit therein. The court agreed with the government that Benton's defense theory put in issue his intent and motive in accepting the money and drugs, and further agreed with the government that evidence of Benton's previous acceptance of payoffs and protection money from bootleggers would shed light on Benton's intent and motives in the case at bar. The court thus permitted Allen to testify about Benton's involvement in the bootlegging industry.

Under Fed.R.Evid. 404(b),[4] Benton concedes that evidence of other crimes, wrongs, or acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Under the balancing of probativeness with prejudice required by Fed.R.Evid. 403,[5] Benton argues that the evidence was so prejudicial that it was an abuse of discretion for the district court to admit such evidence. Benton concedes that we must review the district court's decision to admit the above evidence under an "abuse of discretion" standard. *United States v. Huddleston*, 811 F.2d 974, 975 (6th Cir.1987); *United States v. Pollard*, 778 F.2d 1177, 1179 (6th Cir.1985).

In our view, it was well within the district court's discretion to admit such evidence. The district court could have reasoned that these previous instances of extortion relating to protection of bootlegging were relevant and important to prove

**4.** Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**5.** Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

motive, opportunity, intent, preparation or even plan concerning the charges of extortion relating to protection of cocaine dealers in the indictment, and outweighed any possible prejudice to Benton. Moreover, where evidence of prior bad acts is admitted for the purpose of showing intent, the prior acts need not duplicate exactly the instant charge, but need only be sufficiently analogous to support an inference of criminal intent. *United States v. Burkett,* 821 F.2d 1306, 1309 (8th Cir.1987) We find that evidence of prior acceptance of bribes and payoffs relating to bootlegging is sufficiently similar to acceptance of protection money for drug dealing to support an inference of criminal intent. *United States v. Faulkner,* 538 F.2d 724 (6th Cir.), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 640, 50 L.Ed.2d 624 (1976). Other circuits have also held that evidence of prior bribes or payoffs is admissible to prove criminal intent relating to charges of extortion under color of official right under the Hobbs Act. *E.g.,* see *United States v. Price,* 617 F.2d 455, 459–60 (7th Cir.1980).

▮ As his second argument, Benton maintains the district court erred in permitting Campbell to enter into evidence some papers called a "Confidential File" purportedly maintained by Campbell. Benton argues that the Confidential File was inadmissible hearsay and opinion evidence; that it was not admissible for any purpose under Fed.R.Evid. 404(b); and that it amounted to impermissible bad reputation evidence. Benton argues that the Confidential File material contained unsupported allegations tying him to other crime figures in Morgan County.

Campbell, not the government, introduced the Confidential File into evidence. Campbell offered it to show that he was using Allen and Frederick to acquire information for an investigation into drug dealing in Morgan County.

In our view, this evidence was not as prejudicial to Benton as he leads us to believe. The file only referred to Benton as a possible "target" in a police investigation. The government points out in its brief that Benton's counsel on cross-examination of Campbell elicited the fact that the target report was made by a trooper who bore a personal prejudice towards Benton. Indeed, the only question the government asked concerning the Confidential File was when it was turned over to the government. Neither the government, nor either defense attorney, referred to Benton's name being in the Confidential File in their closing arguments to the jury. Thus, the lack of emphasis at trial strongly suggests that the jury was unaffected by this piece of evidence, and therefore Benton was not unduly prejudiced by its admission into evidence.

The court was conscious of the limited purposes for which the Confidential File evidence was introduced, and warned the jury not to use the reports in that file against Benton for any reason. The court indicated that the file was admitted "to show, number one, that Captain Campbell says that he was conducting an investigation; and second, is to show whether or not he and Mr. Benton were close enough to be engaged in a conspiracy or to disprove the fact that there was a conspiracy … But it's not to be used against Mr. Benton at all." In our view, under Fed.R.Evid. 801(c) the district court was well within its discretion to admit this evidence, since it was admitted not for its truth, but rather to illuminate Campbell's contention that he was conducting his own investigation, and that he maintained a file on the investigation. *United States v. Gibson,* 675 F.2d 825, 833–34 (6th Cir.1982).

▮ Benton also maintains that the district court should have severed the two trials, claiming that he was affected by a "general atmosphere of criminality prejudicial to Benton." However, he shows no specific evidence tending to create such a general atmosphere. The record shows that the Motion to Grant Separate Trial for Defendant Roger Benton stated only that "the trial of this defendant with the other defendants herein will be to the prejudice of the defendant, Roger Benton, and may cause him to receive an unfair trial." The motion contained no other grounds for severing the two trials, and failed to request a

hearing. Thus, the court was completely justified in denying Benton's motion without a hearing. *United States v. Williams,* 809 F.2d 1072, 1084 (5th Cir.1987).

At the close of the government's proof, Benton renewed his motion for severance on the ground that antagonistic defenses had been made by Campbell and Benton. In *United States v. Gallo,* 763 F.2d 1504 (6th Cir.1985), *cert. denied,* 474 U.S. 1068, 106 S.Ct. 826, 88 L.Ed.2d 798 (1986), we held that different defenses by co-defendants do not require a severance of their trials. We held that to prevail the defendant must show that the antagonism between the co-defendants will mislead or confuse the jury. *Id.* at 1525. We recently held that the defendant carries the heavy burden of making a strong showing of factually specific and compelling prejudice resulting from a joint trial. *United States v. Davis,* 809 F.2d 1194, 1207–08 (6th Cir. 1987); *United States v. Swift,* 809 F.2d 320, 322 (6th Cir.1987). In meeting this heavy burden, the defendant must demonstrate the jury's inability to distinguish the evidence relevant to each defendant. 809 F.2d at 322. We further indicated that even if the defendant is able to show some potential jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials. Because Benton has altogether failed, in either oral argument or in the written brief to this court, to indicate in what way the jury was confused, we hold that the court committed no error in proceeding with a joint trial of Campbell and Benton.

Finally, Benton maintains that the district court erred by permitting the government to present character witnesses to testify about Benton's reputation for honesty. As part of his defense, however, Benton introduced character testimony from three witnesses. For example, witness J.W. Pennington testified that Benton had a reputation for "being an honest individual."

To rebut this character evidence, the government called three witnesses. Each witness essentially testified that Benton's reputation for truth and veracity was dubi-ous. Once Benton opened the door by offering evidence of his good character, the government had the right to rebut that evidence. *United States v. McGuire,* 744 F.2d 1197, 1204 (6th Cir), *cert. denied,* 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 159 (1984). In our view, one of the key issues in Benton's trial was his honesty. He had defended the various charges of extortion and conspiracy to distribute drugs on the ground that he was conducting an honest investigation of drug dealing in Morgan County. The district court was well within its discretion to admit evidence tending to show that Benton did not have a reputation for being an honest law enforcement official.

Therefore, Benton's convictions on all counts are AFFIRMED.