UNITED STATES of America, Plaintiff,

v.

Christopher James SHEPARD, Defendant.

No. 1:99–CR–64.

United States District Court, W.D. Michigan, Southern Division.

Nov. 22, 1999.

David M. Clark, Fowler, Tuttle, Clark & Coleman, Lansing, MI, for Christopher James Shepard, defendant.

Mark V. Courtade, U.S. Attorney's Office, Grand Rapids, MI, for U.S.

## OPINION

QUIST, District Judge.

Defendant, Christopher James Shepard ("Shepard"), has been indicted for: conspiracy to distribute cocaine, marijuana, and heroin in violation of 21 U.S.C. §§ 841(a) and 846 (Count 1); conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963 (Count 2); interstate travel in aid of racketeering in violation of 18 U.S.C. §§ 2 and 1952(a)(3) (Count 4); and forfeiture of proceeds derived from and property used to commit or facilitate the charged offenses (Count 7).[1] This matter is before the Court on Shepard's motion to dismiss/quash the indictment on the grounds that the indictment puts Shepard in double jeopardy.

---

1. At the time Shepard filed his motion, the grand jury had not yet returned the second superseding indictment, which added the conspiracy to import marijuana (Count 2) and interstate travel in aid of racketeering (Count 4) counts. The grand jury had also not returned the third superseding indictment, which does not affect Shepard.

## Facts

### A. Texas Indictment

Shepard was indicted by a grand jury in the United States District Court for the Western District of Texas on June 5, 1996 (the "Texas Indictment"). (*See* 6/5/96 Superseding Indictment, Def.'s Br.Ex. 7.) Shepard was indicted for conspiring with Todd Allen Dunham ("Todd Dunham") to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a) and 846 (Count I of Texas Indictment); conspiring with Todd Dunham to import marijuana in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) (Count II of Texas Indictment); possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (Count III of Texas Indictment); and importing marijuana in violation of 21 U.S.C. §§ 952(a) and 960(a)(1) (Count IV of Texas Indictment). Shepard entered into a plea agreement pursuant to which he pled guilty to Count I, conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 846. The remaining counts of the Texas Indictment were dismissed pursuant to the plea agreement. (*See* Plea Agreement, Def.'s Br.Ex. 8.)

The plea agreement included an admission by Shepard of the factual basis for the plea. Shepard stated that he met with Todd Dunham in Denver, Colorado, on February 17, 1996, at which time Todd Dunham purchased a 1974 Ford van. Shepard and Todd Dunham drove the van from Colorado to Michigan. On March 16, 1996, Shepard took Todd Dunham to Detroit Metropolitan Airport, where Todd Dunham bought a ticket and flew from Detroit to El Paso, Texas. Todd Dunham paid Shepard $300 to drive to El Paso, pick him up in the van, and drive him back to Michigan. Shepard arrived in El Paso on March 20, 1996, and met Todd Dunham and Daniel Brown ("Brown") at a hotel in Juarez, Mexico, at which time Todd Dunham gave Shepard an additional $1,000. Todd Dunham took the van on March 21, 1996, to get an "oil change," and returned the van to Shepard on March 22, 1996.

Todd Dunham told Shepard to drive back to Michigan with Brown, but that he (Todd Dunham) was not traveling back to Michigan as planned. Later on March 22, 1996, Shepard, along with Brown, drove the 1974 Ford van across the border from Mexico to the United States in El Paso. Upon a search by U.S. customs, 88.7 pounds of marijuana was found hidden in the floor of the van. Shepard told customs agents that he did not specifically know he was smuggling marijuana but that he knew, based on the circumstances, that he "was probably doing something illegal, but didn't ask questions and didn't want to know what was in the van." (*Id.* at 4–5.)

### B. Michigan Indictment

Count 1 of the Third Superseding Indictment (the "Indictment") in this case charges that, beginning in 1995 and continuing through May 18, 1999, Shepard conspired with eighteen other co-conspirators to possess with intent to distribute more than 1,000 kilograms of marijuana, more than five kilograms of cocaine, and a quantity of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Indictment specifically alleges as an "overt act" in furtherance of the conspiracy that Shepard received wire transfers from co-conspirators in furtherance of the conspiracy. (*See* Indictment, Overt Acts ¶ 25.) The Government asserts that it is prepared to offer "testimony that Shepard assisted in the breaking down of two 120–pound loads of marijuana at the Lansing-area home of two indicted coconspirators in early 1996." (Pl.'s Br. at 6.) The government is also prepared to offer testimony that Shepard was paid on multiple occasions not only by Todd Dunham, but by Chad Dunham as well, to make trips in the van from Michigan to Mexico and return with loads of marijuana, and that one load consisting of 138 pounds of marijuana in fact entered the United States when Shepard drove the vehicle across the border. (*See id.*)

Count 2 of the Indictment charges Shepard with conspiring with Todd Dunham,

Chad Dunham, Jose Alderete, and others in unlawfully importing marijuana in violation of 21 U.S.C. §§ 952(a) and 963, and that "on multiple occasions between ... 1995 and ... March 22, 1996," Shepard imported marijuana into the United States from Mexico and traveled in interstate commerce to bring drug proceeds to Todd Dunham and Chad Dunham so that additional marijuana and other controlled substances could be purchased. (Indictment Count 2)

Count 4 of the Indictment charges Shepard with traveling in interstate and foreign commerce to facilitate the unlawful conspiracies charged in Count 1 and Count 2, in violation of 18 U.S.C. §§ 2 and 1952(a)(3).

Count 7 of the Indictment requests forfeiture of all proceeds from the sale of illegal drugs and all property used by Shepard to commit or facilitate the commission of the sale of illegal drugs.

### Analysis

#### A. Existence of separate conspiracies

Shepard argues that the charges against him violate the Double Jeopardy clause of the Fifth Amendment to the Constitution because he has already pled guilty in the Western District of Texas and served his sentence for his role in the conspiracy alleged in the Indictment. The Government responds that the conspiracy charged in the Indictment is far different in scope and duration than the count to which he pled guilty in the Texas Indictment, and is, therefore, not barred by the Double Jeopardy clause.

 A conspiracy exists where two or more people agree to accomplish an unlaw-

ful purpose by concerted action. *See United States v. Hutto*, 256 U.S. 524, 528–29, 41 S.Ct. 541, 543, 65 L.Ed. 1073 (1921). In other words, "[a] conspiracy is a partnership in criminal purposes." *United States v. Kissel*, 218 U.S. 601, 608, 31 S.Ct. 124, 126, 54 L.Ed. 1168 (1910). The hallmark of a conspiracy is the agreement between the parties. *See Braverman v. Unites States*, 317 U.S. 49, 53, 63 S.Ct. 99, 102, 87 L.Ed. 23 (1942).

The Sixth Circuit has "adopted a 'totality of the circumstances' test for determining whether 'separate conspiracies charged in different grand jury indictments are, in reality, one for the purposes of the fifth amendment prohibition against double jeopardy.'" *United States v. Benton*, 852 F.2d 1456, 1462 (6th Cir.1988) (quoting *United States v. Sinito*, 723 F.2d 1250, 1257 (6th Cir.1983)).

The test requires the trial court, in determining whether two conspiracies arise from a single agreement, to consider the elements of: 1) time; 2) persons acting as co-conspirators; 3) the statutory offenses charged in the indictments; 4) the overt acts charged by the government or any other description of the offenses charged which indicates the nature and scope of the activity which the government sought to punish in each case; and 5) places where the events alleged as part of the conspiracy took place. Where several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses.

*Sinito*, 723 F.2d at 1256–57 (citations omitted).[2]

---

2. In his Reply Brief, Shepard argues that *Benton*, 852 F.2d 1456, deals with a hung jury and not an actual conviction or a plea. However, Shepard fails to recognize that *Sinito*, 723 F.2d 1250, involved an initial guilty verdict.

Additionally, the factors laid out in *Sinito* have wide support throughout the Circuit Courts. *See United States v. Gomez–Pabon*, 911 F.2d 847, 860 (1st Cir.1990); *United States v. Korfant*, 771 F.2d 660, 662 (2d Cir.

1985) (per curiam) (applying similar factors); *United States v. Becker*, 892 F.2d 265, 268 (3d Cir.1989); *United States v. MacDougall*, 790 F.2d 1135, 1144 (4th Cir.1986); *United States v. Marable*, 578 F.2d 151, 154 (5th Cir.1978); *United States v. Castro*, 629 F.2d 456, 461 (7th Cir.1980); *United States v. Thomas*, 759 F.2d 659, 661–62 (8th Cir.1985); *United States v. Benefield*, 874 F.2d 1503, 1506 (11th Cir. 1989).

### 1. Time

 The Texas Indictment and the factual basis for the plea in the Texas case indicate that Shepard was only put into jeopardy for his actions "[o]n or about March 22, 1996...." (*See* Texas Indictment, Def.'s Br.Ex. 7.) The time period alleged in the current Indictment is much larger, beginning several months before March 22, 1996, and ending in May 1999. In *Sinito*, the Sixth Circuit held that a ten-month overlap is not necessarily an indication of a single conspiracy. *See* 723 F.2d at 1257. However, it is well-established that a single agreement to commit an offense does not become multiple conspiracies simply because the conspiracy continues over time. *See Braverman*, 317 U.S. at 52, 63 S.Ct. at 101. Both the Texas Indictment and the current Indictment charge Shepard with conspiracies beginning at approximately the same time, though the current Indictment alleges acts beyond the time of the Texas Indictment. The fact that the two indictments allege conspiracies beginning at roughly the same time is evidence of a single conspiracy. Accordingly, this factor weighs in favor of finding a single conspiracy for purposes of double jeopardy.

### 2. Number of co-conspirators involved

The Texas Indictment indicates that Shepard conspired with one known person, Todd Dunham, as well as others unknown to the Grand Jury. The current Indictment alleges that Shepard conspired with seventeen named co-conspirators in addition to Todd Dunham. While the two indictments do not allege identical numbers of co-conspirators, they do allege one identical party and the Texas Indictment acknowledges that there are others. Shepard should not be punished twice because of the government's failure to name or inability to determine the identities of co-conspirators when Shepard was indicted in Texas. Therefore, this factor weighs in favor of finding a single conspiracy for purposes of double jeopardy.

### 3. Statutory offenses charged in the indictments

 The statutory offenses Shepard was indicted for violating in the Texas Indictment are the same as the statutory offenses charged in the current Indictment, except that the government has added a count for Interstate Travel in Aid of Racketeering ("ITAR") in violation of 18 U.S.C. § 1952. The only substantial difference between the ITAR count and those included in both indictments is that the statutory offenses charged in the Texas Indictment were limited geographically to the Western District of Texas and Mexico, whereas the ITAR charge in the current Indictment alleges travel by Shepard in interstate and foreign commerce between Michigan, Texas, Colorado, and Mexico, to establish, facilitate, and carry out the alleged drug crimes. While the ITAR charge alters the territory covered, the underlying offense, possession and distribution of marijuana, remains the same. The altered territory would not necessarily require separate agreements to conspire, as the parties had already conspired to possess and distribute drugs. Further, one agreement cannot be turned into several agreements thereby creating several conspiracies merely because the agreement contemplates violation of multiple statutes rather than one. *See Braverman*, 317 U.S. at 53, 63 S.Ct. at 102.

In addition, the Indictment charges Shepard with possession with intent to distribute not only marijuana, as in the Texas Indictment, but also other controlled substances. (*See* Pl.'s Br.Ex. A at 17.) This is factually similar to *Sinito*, where Sinito was charged a second time under the same statute, but for different object offenses. *See* 723 F.2d at 1258. Sinito's first indictment was for loansharking, while his second indictment alleged murder, gambling, drug trafficking, and obstruction of justice. The Court found that Sinito was not put in double jeopardy. *See id.* In contrast, Shepard was originally charged with a conspiracy involving

marijuana and is presently charged with a conspiracy involving marijuana as well as cocaine and heroin. A single agreement to conspire could encompass marijuana, cocaine, and heroin. Further, as outlined above, both indictments charge conspiracies starting at roughly the same time. Therefore, Shepard's situation is distinguishable from *Sinito*. Accordingly, this factor weighs in favor of finding a single conspiracy for purposes of double jeopardy.

### 4. Overt acts / scope of activity

■ There is a substantial difference in the scope of activity charged in the Texas Indictment when compared to the current Indictment. The Texas Indictment was limited to Shepard's single overt act of crossing the border from Mexico to Texas in a van carrying approximately 88.7 pounds of marijuana. In contrast, the current Indictment alleges that Shepard traveled in interstate and foreign commerce between Michigan, Texas, Colorado, Illinois, and Mexico to secure marijuana and cocaine and return drug proceeds. The government indicates that it will present evidence that Shepard drove several vehicles with marijuana across the Mexican/United States border on several occasions, broke down at least two 120–pound loads of marijuana at the Lansing, Michigan home of an indicted co-conspirator, and carried firearms for Todd Dunham in this district. (*See* Pl.'s Br. at 9.) The government also indicates that it will present evidence to support the allegation in the Indictment that the conspiracy charged in the current Indictment involved cocaine and heroin in addition to marijuana.[3] (*See id.* at 9–10.) However, as detailed above, the additional acts committed after the Texas Indictment and not charged in the Texas Indictment are likely to have arisen from the same agreement to conspire. The issue is not whether the conspiracy involved multiple crimes, but

whether there were multiple agreements to conspire between the parties. *See Braverman*, 317 U.S. at 53, 63 S.Ct. at 102. Accordingly, while the nature and scope of the activity charged in the current Indictment and that charged in the Texas Indictment are different, they are not so different or separate as to suggest multiple conspiracies for the purposes of double jeopardy.

### 5. Places where the events took place

The Texas Indictment and the factual basis supporting Shepard's plea indicate that Shepard's involvement in the conspiracy was limited to Texas and Mexico. The current Indictment indicates that the events in furtherance of the conspiracy also took place in Colorado, Illinois, and the Western District of Michigan. However, a single conspiracy is not transformed into multiple conspiracies because the agreement to conspire contemplates violation of multiple statutes. The question is whether there were multiple agreements to conspire. *See Braverman*, 317 U.S. at 53, 63 S.Ct. at 102. Accordingly, this factor also weighs in favor of finding a single conspiracy for purposes of double jeopardy.

As the Sixth Circuit indicated in *Sinito*, "[w]here several of these factors differ between the conspiracies, the conclusion follows that the alleged illegal conspiracies are separate and distinct offenses." *Sinito*, 723 F.2d at 1256–57. However, in Shepard's case the factors are similar between conspiracies, and suggest a single agreement to conspire. Accordingly, because each of the factors set forth by the Sixth Circuit weighs in favor of finding a single conspiracy for purposes of double jeopardy, Shepard's motion to dismiss the current indictment will be granted as to Count 1.

---

**3.** In his Reply Brief, Shepard argues that the government has not provided sufficient discovery. (Def.'s Reply Br. at 5–7.) However, there is no general right to discovery in crimi-

nal cases. *See Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977).

## B. Blockburger test

Shepard is not subject to double jeopardy on Count 2 (conspiracy to import marijuana) or Count 4 (interstate travel in aid of racketeering) for an independent reason, as these counts charge Shepard with violation of a statute with elements different than the elements of the statute to which he pled guilty in the Texas Indictment, 21 U.S.C. §§ 841(a)(1) and 846.

Criminal offenses are not the same for double jeopardy purposes if the two offenses each requires proof of an element not contained in the other. *See United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556 (1993); *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). A defendant is not placed in double jeopardy merely because the same conduct alleged in the first prosecution would have to be proven in the second prosecution. *See United States v. Forman*, 180 F.3d 766, 769 (6th Cir.1999) (noting that the Supreme Court in *Dixon* rejected the "same conduct" test set forth in *Grady v. Corbin*, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), which held that a defendant was placed in double jeopardy if the actual evidence needed to convict the defendant in the first trial is the same evidence needed to obtain the second conviction).

There is no question that the elements of the crimes charged in Counts 2 and 4 are different than the elements of the crime to which Shepard pled guilty in Texas, possession of marijuana with intent to distribute under 21 U.S.C. §§ 841(a) and 846. Count 2, conspiracy to import marijuana in violation of 21 U.S.C. §§ 952(a) and 963, involves proof of importation, which 21 U.S.C. §§ 841(a)(1) and 846 do not. Additionally, 21 U.S.C. §§ 841(a) and 846 require proof of distribution, which 21 U.S.C. §§ 952(a) and 963 do not. The Supreme Court has specifically held that conspiracy to import a controlled substance and conspiracy to possess with intent to distribute a controlled substance are different offenses under the Double Jeopardy clause, as "[s]ections 846 and 963 specify different ends as the proscribed object of the conspiracy—distribution as opposed to importation—and it is beyond peradventure that each provision requires proof of a fact [that] the other does not." *Albernaz v. United States*, 450 U.S. 333, 339, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981); *see also United States v. Davis*, 809 F.2d 1194, 1205–06 (6th Cir .1987) (holding conspiracy to import heroin and conspiracy to possess heroin with intent to distribute were two separate offenses for double jeopardy purposes).

Similarly, Count 4, interstate travel in aid of racketeering under 18 U.S.C. §§ 2 and 1952(a)(3) (the "Travel Act"), is not the same offense for double jeopardy purposes as a conspiracy charge under 21 U.S.C. §§ 841(a) and 846. *See United States v. Sammons*, 918 F.2d 592, 604–05 (6th Cir.1990) (citing with approval *United States v. Cerone*, 830 F.2d 938, 944–46 (8th Cir.1987)); *Manns v. United States*, 86 F.3d 1158, 1996 WL 266434, at *1 (7th Cir. May 17, 1996) (citing *Sammons* with approval for the proposition that "[s]ection 841 requires proving certain facts that § 1952 does not, and, conversely, § 1952 requires proof of facts that § 841 does not; thus both offenses are separate for purposes of double jeopardy"). This is because conspiracy requires proof of an agreement, distinguishing conspiracy from aiding and abetting under the Travel Act which, although often based on agreement, does not require proof of agreement. *See Cerone*, 830 F.2d at 945. "Most importantly, the legislative history underlying the Travel Act indicates that Congress did not intend conspiracy to merge with aiding and abetting a Travel Act offense." *Id.* at 946 (noting that "conspiracy was proposed as an element of section 1952, but was rejected"). When determining whether punishments are "multiple" under this aspect of the Double Jeopardy Clause, the Court is bound by the intent of the legislature. *See Ohio v. Johnson*, 467 U.S. 493, 499, 104 S.Ct. 2536, 2540–41, 81 L.Ed.2d

425 (1984). A Travel Act offense is "a separate offense from conspiracy, and double jeopardy principles are not violated by a prosecution for both offenses." *Cerone*, 830 F.2d at 946. Accordingly, Counts 2, 4, and 7 do not violate the Double Jeopardy clause of the Constitution. Therefore, Defendant's Motion to Dismiss/Quash Indictment will be denied as to these counts.

### Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss/Quash Indictment will be denied as to Counts 2, 4, and 7, and granted as to Count 1.

An Order consistent with this Opinion will be entered.